[No. D049604. Fourth Dist., Div. One. Mar. 20, 2007.]

THE PEOPLE, Plaintiff and Respondent, v.
ROBERT FRANKLIN BURCH, Defendant and Appellant.

COUNSEL

Jennifer A. Gambale, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer and Edmund G. Brown, Jr., Attorneys General, Mary Jo Graves, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Rhonda Cartwright-Ladendorf and Kristen K. Chenelia, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

BENKE, Acting P. J.—Robert Franklin Burch was convicted of possession of methamphetamine, count 1, and possession of fictitious bills, count 2. It was also found true he served a term of imprisonment within the meaning of Penal Code[1] section 667.5, subdivision (b). Burch was sentenced to four years in prison. He appeals, arguing (1) the trial court abused its discretion when denying his request to bifurcate the trial on his prior conviction which

---

[1] All further statutory references are to the Penal Code unless otherwise specified.

resulted in prejudicial error, (2) the trial court prejudicially erred by failing to sua sponte instruct the jury with CALJIC No. 2.02 in regards to count 2, and (3) his federal constitutional rights were violated when sentenced to the upper term without the aggravating factors being found by a jury.

## FACTS

### A. *Prosecution Case*

On December 7, 2004, San Bernardino County Sheriff's Department deputies were dispatched to a recreational vehicle park to make contact with appellant, who was visiting a girlfriend. The deputies learned appellant had an outstanding no bail warrant. The deputies arrived and were let into the trailer by appellant's girlfriend, where they arrested appellant on the warrant. During the arrest, appellant asked to leave his money and car keys with his girlfriend. A deputy removed twenty-four $20 bills from appellant's pocket. The deputy realized the bills were counterfeit because they were a vibrant green and each bill had the same serial number. The deputy then removed the car keys from appellant's pocket and in the process removed a small vial, which the crime lab determined contained methamphetamine.

An expert from the United States Secret Service testified that the bills removed from appellant's pocket were counterfeit. He explained the bills were not printed on the correct paper, lacked unique serial numbers, were unevenly cut, had no security fibers or thread, no color-shifting ink or watermark, and were likely produced on an inkjet printer.

### B. *Defense Case*

Appellant borrowed $5 from his mother so he could buy gas to drive to his girlfriend's house. As he was leaving the gas station behind a van, he saw two bundles of bills on the ground. He picked up the bills, placed them on the seat and drove to his girlfriend's. When he arrived, he showed her the money, told her he found it in a field near the gas station and then put it in his pocket. Appellant said he did not know the money was counterfeit. Appellant had no training in detecting counterfeit currency, only had the money for 25 to 40 minutes before his arrest and had only inspected the money for a few minutes. Appellant's girlfriend also believed the money was genuine. Appellant was only at her house for five minutes before the police arrived. Appellant said he wanted to leave the money with her because he was going to jail and she needed it more than he did.

Appellant admitted to possessing the vial containing the methamphetamine. Appellant admitted to having three felony priors and serving a prison term for one of the priors. Appellant was discharged from parole in 2004.

## DISCUSSION

## I

*Denial of Appellant's Motion to Bifurcate*

Appellant contends the trial court abused its discretion when it refused to bifurcate the trial on his prior convictions from the trial on the underlying charges. He argues this error resulted in the admission of evidence that was extremely prejudicial.

### A. *Background*

Prior to trial, the trial court and counsel agreed appellant could be impeached by his three prior felony convictions, which included a prison prior. The trial court agreed to bifurcate the trial of appellant's prison prior unless and until he testified. The court warned that if appellant did testify, it would vacate the bifurcation order. During trial, appellant decided to testify and defense counsel requested the court still bifurcate the trial because the prison prior was potentially prejudicial. The court denied this request, stating: "I don't see much prejudice once [the prior] comes out. The whole purpose of the bifurcation is the prejudice attached to felony convictions. So I just don't see much prejudice involved once the felony convictions come out, the fact that there was a sentence involved, whatever it be. I don't think it warrants a bifurcation."

Appellant was impeached with the three priors and the trial court admitted into evidence redacted versions of the minute order, plea form and abstract of judgment to prove the allegation appellant pleaded guilty to the prison prior and served a prison term. Additionally, a section 969, subdivision (b), packet was admitted without objection to show the dates of appellant's custody. Finally, the dates of appellant's multiple parole violations and reconfinements were noted by the prosecution during closing argument.

### B. *Law*

■ The primary consideration for the trial court in ruling on a request to bifurcate a sentence enhancement is whether the admission of evidence relating to the enhancement during the trial on the charged offenses would pose a substantial risk of undue prejudice to the defendant. (*People v. Calderon* (1994) 9 Cal.4th 69, 77–78 [36 Cal.Rptr.2d 333, 885 P.2d 83].) The court should consider factors that affect the potential for prejudice, including "the degree to which the prior offense is similar to the charged offense [citations], how recently the prior conviction occurred, and the relative

seriousness or inflammatory nature of the prior conviction as compared with the charged offense [citations]." (*Id.* at p. 79.) The court should also consider whether potential prejudice is lessened for some reason, such as when evidence will be admitted for a purpose other than sentence enhancement. (*Ibid.*) The denial of bifurcation will not unduly prejudice the defendant when, "even if bifurcation were ordered, the jury still would learn of the existence of the prior conviction before returning a verdict of guilty." (*Id.* at p. 78.) For example, when "it is clear . . . the defendant will testify and be impeached with evidence of the prior conviction [citation], denial of a request for a bifurcated trial generally would not expose the jury to any additional prejudicial evidence concerning the defendant." (*Ibid.*, fn. omitted.)

The determination of whether the risk of undue prejudice to the defendant requires bifurcation is within the sound discretion of the trial court. (*People v. Calderon, supra*, 9 Cal.4th at p. 79.) On appeal, we review the trial court's ruling for an abuse of discretion, based on a review of the record that was before the trial court at the time of the ruling. (*People v. Price* (1991) 1 Cal.4th 324, 388 [3 Cal.Rptr.2d 106, 821 P.2d 610].) However, even if the trial court's ruling was correct at the time it was made, reversal is required if the defendant shows the failure to bifurcate resulted in " ' "gross unfairness" amounting to a denial of due process.' " (*People v. Mendoza* (2000) 24 Cal.4th 130, 162 [99 Cal.Rptr.2d 485, 6 P.3d 150], quoting *People v. Arias* (1996) 13 Cal.4th 92, 127 [51 Cal.Rptr.2d 770, 913 P.2d 980].)

### C. *Analysis*

Appellant argues the court's denial of bifurcation of the prison prior allowed the admission of evidence that went beyond the admission of the conviction itself and was extremely prejudicial. He contends the refusal to bifurcate opened the door to cross-examination on matters related to the prior that would not have been admissible for impeachment if the proceedings were bifurcated. We find no abuse of discretion.

Prior to trial, the court ordered a conditional bifurcation of the prison prior allegation from the underlying charges; a procedure noted by the California Supreme Court as appropriate. (*People v. Calderon, supra*, 9 Cal.4th at p. 79.) The court was willing to ensure the jury would not be exposed to potentially prejudicial information offered for an improper purpose if appellant chose not to testify. During trial, when defense counsel informed the court of appellant's intention to testify and again requested bifurcation, the court reconsidered the request in light of the potential prejudice arising from the admission of evidence of the prison prior allegation. The court noted the potential prejudice attached to felony convictions, but felt there was not much prejudice involved if the felony conviction would be brought out to impeach

appellant. At that time, it was clear appellant would testify and be impeached with evidence of the prior conviction. Therefore, the trial court reasoned, the denial of bifurcation did not expose the jury to any unduly prejudicial evidence.

Appellant contends the admission of evidence to prove the prison prior resulted in "gross unfairness." Appellant argues that if the proceedings were bifurcated, the jury would not have been exposed to a number of questions regarding his prior plea agreement, his prison term and his parole status since his release. Appellant believes this questioning prejudiced him by showing him as an individual incapable of following the law and as a felon who could not stop offending.

As a result of the denial of bifurcation, the admission of evidence to prove the prison prior allegation did not result in "gross unfairness" to appellant. In order to prove appellant had a prison prior, the prosecution had to show appellant was convicted of a felony, served a prison term and was in custody within the last five years. (See CALJIC No. 17.18.) To prove the conviction and the prison term, the court admitted redacted versions of the minute order, plea form and abstract of judgment from the prison prior. On cross-examination, the prosecution limited questions regarding this evidence to whether it was in fact appellant's signature on the plea agreement, if the plea agreement was for the crime for which he served a prison term and the date the term began. Appellant's section 969, subdivision (b), packet was admitted to prove he was in custody during the last five years. Appellant was only questioned on whether he recognized his picture attached to the paperwork, what the subject matter of the document was and when he was most recently discharged from prison and parole. In order to reduce potential unfairness, the court worked with defense counsel to redact portions of these documents that might be unduly prejudicial.

Any potential unfairness from the admission of evidence necessary to prove the prior prison allegation is overshadowed by the impact to appellant's credibility associated with his criminal record that was properly used to impeach him. Appellant argues his credibility was unfairly damaged because the evidence of the prior prison allegation portrayed him as being incapable of following the law. However, once appellant's prior convictions were used for impeachment, the damage was already done. Thus, reversal is not warranted because the admission of the evidence to prove the prior prison allegation results in no "gross unfairness" that denied appellant due process. (*People v. Mendoza, supra*, 24 Cal.4th at p. 162.)

Assuming arguendo the trial court's denial of the bifurcation request was error, any error in failing to bifurcate was harmless because no prejudice can

be shown. The court emphasized the limited purpose for the admission in evidence of the prison prior allegation. The court gave CALJIC No. 17.18 expressly to caution the jury not to "consider the allegation or evidence offered thereon in your determination of defendant's guilt of the crimes for which he is now on trial." In the absence of a contrary showing in the record, we presume the jury understood and followed the court's instruction. (*People v. Smithey* (1999) 20 Cal.4th 936, 961 [86 Cal.Rptr.2d 243, 978 P.2d 1171].) There is no reasonable probability the jury did not properly apply the rule regarding the limited purpose for which the evidence of the prison prior was offered. Thus, any error in failing to bifurcate the trial was harmless. (See *People v. Watson* (1956) 46 Cal.2d 818, 836–837 [299 P.2d 243].)

## II

### *Instruction on Circumstantial Evidence with CALJIC No. 2.01 Instead of CALJIC No. 2.02*

Appellant contends his conviction for possession of fictitious bills must be reversed because the trial court erred by instructing the jury on circumstantial evidence with CALJIC No. 2.01 instead of CALJIC No. 2.02. He argues that because he admitted possession of the bills, the only issue remaining to be decided was whether he had the specific intent to defraud. Therefore, CALJIC No. 2.02 should have been given by the trial court sua sponte because that instruction specifically explains to the jury how to evaluate circumstantial evidence of specific intent.

### A. *Background*

At trial, defense counsel requested the trial court provide a special instruction: "Specific intent is a matter for which direct evidence can only be provided by the person in whom the intent must exist; otherwise, the only proof of specific intent comes from circumstantial evidence . . . ." Defense counsel felt this instruction was appropriate because both direct and circumstantial evidence were presented as to the specific intent required for the forgery count. The trial court denied this request, believing CALJIC Nos. 2.00 and 2.01 were sufficient to instruct the jury on the issues of direct and circumstantial evidence and there was no precedent for giving the special instruction. When the trial court announced its intention to instruct with CALJIC No. 2.01, appellant did not object, nor did appellant object when the court announced it was withdrawing CALJIC No. 2.02. The court subsequently instructed the jury with CALJIC No. 2.01.

## B. *Law*

Questions relating to the validity and impact of the instructions given to the jury are entitled to de novo review. We review the instructions independently because the underlying question is one of law and the application of legal principles. (*People v. Alvarez* (1996) 14 Cal.4th 155, 217 [58 Cal.Rptr.2d 385, 926 P.2d 365]; *Mattco Forge, Inc. v. Arthur Young & Co.* (1997) 52 Cal.App.4th 820, 831 [60 Cal.Rptr.2d 780].)

■ A trial court has the duty to instruct sua sponte "on general principles of law that are closely and openly connected with the facts presented at trial" and that are necessary for a jury's understanding of the case. (*People v. Ervin* (2000) 22 Cal.4th 48, 90 [91 Cal.Rptr.2d 623, 990 P.2d 506].) In particular, "[a] trial court has a sua sponte duty to give CALJIC No. 2.01 in criminal cases 'where circumstantial evidence is substantially relied upon for proof of guilt . . . .' " (*People v. Johnwell* (2004) 121 Cal.App.4th 1267, 1274 [18 Cal.Rptr.3d 286], quoting *People v. Yrigoyen* (1955) 45 Cal.2d 46, 49–50 [286 P.2d 1].)

CALJIC No. 2.01, as given by the trial court, is entitled "Sufficiency of Circumstantial Evidence—Generally" and states: "However, a finding of guilt as to any crime may not be based on circumstantial evidence unless the proved circumstances are not only [¶] One: Consistent with the theory that the defendant is guilty of the crime, [¶] But, two: Cannot be reconciled with any other rational conclusion. [¶] Further, each fact which is essential to complete a set of circumstances necessary to establish the defendant's guilt must be proved beyond a reasonable doubt. In other words, before an inference essential to establish guilt may be found to have been proved beyond a reasonable doubt, each fact or circumstance upon which the inference necessarily rests must be proved beyond a reasonable doubt. [¶] Also, if the circumstantial evidence as to any particular count permits two reasonable interpretations, one of which points to the defendant's guilt and the other to his innocence, you must adopt that interpretation which points to the defendant's innocence, and reject that interpretation which points to his guilt. If, on the other hand, one interpretation of this evidence appears to you to be reasonable and the other interpretation to be unreasonable, you must accept the reasonable interpretation and reject the unreasonable."[2]

---

[2] CALJIC No. 2.01 followed the trial court's instruction with CALJIC No. 2.00 on direct and circumstantial evidence and inferences: "Evidence consists of testimony of witnesses, writings, material objects, or anything presented to the senses and offered to prove the existence or nonexistence of a fact. Evidence is either direct or circumstantial. Direct evidence is evidence that directly proves a fact. It is evidence which by itself, if found to be true, establishes that fact. [¶] Circumstantial evidence is evidence that, if found to be true, proves a fact from which an inference of the existence of another fact may be drawn. [¶] An inference is

CALJIC No. 2.02, which was *not* given by the trial court, is entitled "Sufficiency of Circumstantial Evidence to Prove Specific Intent or Mental State" and states: "The [specific intent] [or] [and] [mental state] with which an act is done may be shown by the circumstances surrounding the commission of the act. However, you may not [find the defendant guilty of the crime charged . . . ] unless the proved circumstances are not only (1) consistent with the theory that the defendant had the required [specific intent] [or] [and] [mental state] but (2) cannot be reconciled with any other rational conclusion. [¶] Also, if the evidence as to [any] [specific intent] [or] [mental state] permits two reasonable interpretations, one of which points to the existence of the [specific intent] [or] [mental state] and the other to its absence, you must adopt that interpretation which points to its absence. If, on the other hand, one interpretation of the evidence as to the [specific intent] [or] [mental state] appears to you to be reasonable and the other interpretation to be unreasonable, you must accept the reasonable interpretation and reject the unreasonable." (See CALJIC No. 2.02 (2006 ed.).)

The Supreme Court noted in *People v. Cole* (2004) 33 Cal.4th 1158 [17 Cal.Rptr.3d 532, 95 P.3d 811]: "The general instruction on sufficiency of circumstantial evidence [CALJIC No. 2.01] is a more inclusive instruction on sufficiency of circumstantial evidence than [CALJIC No. 2.02] the instruction on sufficiency of circumstantial evidence to prove specific intent or mental state, and the former is the proper instruction to give unless the only element of the offense that rests substantially or entirely on circumstantial evidence is that of specific intent or mental state. [Citations.]" (*Id.* at p. 1222.) "Accordinging to the Use Note to CALJIC No. 2.02, the instruction 'is designed for use *instead of* CALJIC No. 2.01 in a specific intent or mental state case in which the *only element of the offense* which rests substantially or entirely on circumstantial evidence is the element of specific intent or mental state.' "[3] (*People v. Rodrigues* (1994) 8 Cal.4th 1060, 1141–1142, fn. 46 [36 Cal.Rptr.2d 235, 885 P.2d 1].)

---

a deduction of fact that may logically and reasonably be drawn from another fact or group of facts established by the evidence. [¶] It is not necessary that facts be proved by direct evidence. They also may be proved by circumstantial evidence or by a combination of direct and circumstantial evidence. Both direct and circumstantial evidence are acceptable as a means of proof. Neither is entitled to any greater weight than the other."

[3] The Use Note to CALJIC No. 2.02 states: "CALJIC 2.01 and CALJIC 2.02 should never be given together. This is because CALJIC 2.01 is inclusive of all issues, including mental state and/or specific intent, whereas CALJIC 2.02 is limited to just mental state and/or specific intent. Therefore, they are alternative instructions. If the only circumstantial evidence relates to specific intent or mental state, CALJIC 2.02 should be given. [I]f the circumstantial evidence relates to other matters, or relates to other matters as well as specific intent or mental state, CALJIC 2.01 should be given and not CALJIC 2.02. [Citations.]" (See Use Note to CALJIC No. 2.02 (2006 ed.).)

## C. *Analysis*

Appellant argues that in order to be found guilty of forgery in violation of section 476, it must be found he possessed a fictitious bill that purports to be real and that he did so with the specific intent to defraud. (See CALJIC No. 15.08.) He contends that while direct evidence was presented he possessed the bills that purported to be real, only circumstantial evidence was relied on to prove specific intent to defraud. Because specific intent to defraud was the only element that rested substantially or entirely on circumstantial evidence, he contends the trial court should have given CALJIC No. 2.02.

We agree CALJIC No. 2.02 should have been given. At trial the prosecution had the burden of proving appellant was in possession of fictitious bills, which purported to be real, and did so with the specific intent to defraud. The prosecution only substantially relied on circumstantial evidence to prove one of these elements, appellant's specific intent to defraud. To prove appellant was in possession of the bills and that the bills purported to be real, the prosecution relied on direct evidence from the deputy who removed the bills from appellant's pocket and the United States' Secret Service agent who testified as to the bills' authenticity. Circumstantial evidence was not substantially relied on to prove either possession of or authenticity of the bills. Because only the element of appellant's specific intent substantially relied on circumstantial evidence, it would have been preferential for the trial court to instruct the jury with CALJIC No. 2.02.

However, even if CALJIC No. 2.02 should have been given, we cannot reverse. The only difference between the two instructions is that CALJIC No. 2.02 focuses the jury's attention on the sufficiency of the circumstantial evidence to prove specific intent or a mental state, while CALJIC No. 2.01 broadly covers all circumstantial evidence. In *People v. Rodrigues, supra,* 8 Cal.4th 1060 the trial court instructed the jury with CALJIC No. 2.01 instead of CALJIC No. 2.02. (*Rodrigues,* at p. 1141.) On appeal, Rodrigues argued the trial court had a sua sponte duty to instruct with CALJIC No. 2.02 because "the prosecutor relied substantially, if not exclusively, upon circumstantial evidence to prove the requisite mental states for the crimes charged." (*Rodrigues,* at p. 1142.) There was a dispute whether the circumstantial evidence of mental state was substantially relied upon or just incidental to direct evidence which was offered. However, the Supreme Court noted it need not resolve the dispute because, as in this case, the trial court's delivery of the more inclusive instruction (CALJIC No. 2.01) precluded a finding of prejudicial error. (*Rodrigues,* at p. 1142.) In this case, there is no reasonable probability the jury would have misapplied the rules applicable to circumstantial evidence stated in CALJIC No. 2.01 to the determination

whether appellant had the requisite specific intent to support the forgery charge. Any error was clearly harmless and appellant has failed to carry his appellate burden to show the purported error was prejudicial. (See *Rodrigues*, at p. 1142; *People v. Johnwell, supra,* 121 Cal.App.4th at p. 1274 ["[t]he failure to give CALJIC No. 2.01, where appropriate, is assessed under the standard of [*People v. Watson, supra,* 46 Cal.2d at p. 836]"].)

## III

### *Imposition of the Upper Term*

Appellant contends the trial court's imposition of the upper term on count 1 violated his federal constitutional rights to proof beyond a reasonable doubt and a jury trial. He argues that pursuant to *Blakely v. Washington* (2004) 542 U.S. 296 [159 L.Ed.2d 403, 124 S.Ct. 2531] and *United States v. Booker* (2005) 543 U.S. 220 [160 L.Ed.2d 621, 125 S.Ct. 738] he was entitled to have the aggravating factors found by a jury.

Appellant's argument is without merit. Appellant's sentence is constitutionally permissible because the aggravating factors used by the trial court when imposing the upper term were his prior convictions: three felonies and three misdemeanors. Before imposing the upper term, the trial court stated on the record that the prison term "should be aggravated and there's lots of justification for the aggravation on term—for Count 1. And the [appellant's] prior record all by itself justifies that." (See Cal. Rules of Court, rule 4.420(e) ["The reasons for selecting the upper or lower term must be stated orally on the record, and must include a concise statement of the ultimate facts that the court deemed to constitute circumstances in aggravation or mitigation justifying the term selected"].) The use of prior convictions as factors for a sentencing departure from the statutory maximum (middle term) is constitutionally permissible because it falls within the Supreme Court's bright-line exception stated in *Apprendi v. New Jersey* (2000) 530 U.S. 466 [147 L.Ed.2d 435, 120 S.Ct. 2348], which has recently been reaffirmed in *Cunningham v. California* (2007) 549 U.S. ___ [166 L.Ed.2d 856, 127 S.Ct. 856, 864] (except for a prior conviction, " 'any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt,' " quoting *Apprendi, supra,* 530 U.S. at p. 490). The aggravated term was not based on any facts that must have been decided by a jury under the *Apprendi* standard and even a single aggravating circumstance is enough to render appellant eligible for the upper term. (*People v. Osband* (1996) 13 Cal.4th 622, 728–729 [55 Cal.Rptr.2d 26, 919 P.2d 640].) Therefore, we find no error.

## DISPOSITION

For the foregoing reasons the judgment is affirmed.

Huffman, J., and O'Rourke, J., concurred.