64 Cal.Rptr.3d 456 (2007)
153 Cal.App.4th 445
The PEOPLE, Plaintiff and Respondent,
v.
Guillermo CARDENAS, Defendant and Appellant.
No. B190463.
Court of Appeal of California, Second District, Division Seven.
July 17, 2007.
*458 Robert H. Pourvali, Calabasas, under appointment by the Court of Appeal, for Defendant and Appellant.
Edmund G. Brown, Jr., Attorney General, Mary Jo Graves, Chief Assistant Attorney General, Pamela C. Hamanaka, Senior Assistant Attorney General, Linda C. Johnson and Carl N. Henry, Deputy Attorneys General, for Plaintiff and Respondent.
*457 JOHNSON, J.
Guillermo Cardenas appeals from the judgment following his conviction for second degree robbery. He contends the prosecutor exercised group bias in excusing two Hispanic prospective jurors in violation of People v. Wheeler[1] and the trial court erred in imposing the upper term sentence based on facts not found by the jury beyond a reasonable doubt in violation of Cunningham v. California.[2] We find no merit to defendant's Wheeler contention but we conclude defendant was sentenced to the high term in violation of Cunningham.

FACTS AND PROCEEDINGS BELOW
A jury convicted Cardenas of robbing Cory Konopka of his wallet on the street in front of Konopka's workplace. Cardenas and Konopka had been co-workers but Cardenas had recently been fired. He believed Konopka played a role in his termination. The facts showed another person assisted Cardenas in the robbery but this person was not a co-defendant or witness in Cardenas' trial.
We concern ourselves here only with the jury selection process and the trial court's imposition of the upper term sentence. We state the facts relevant to these issues in our discussion below.

DISCUSSION

I. SUBSTANTIAL EVIDENCE SUPPORTS THE TRIAL COURT'S FINDING TWO HISPANIC JURORS WERE NOT EXCUSED BECAUSE OF GROUP BIAS.

A. Factual BackgroundThe Voir Dire
Because the court would be using a Spanish language interpreter for some of the witnesses, potential jurors were questioned about their fluency in Spanish and their ability to put their fluency aside and accept the translations by the interpreter.[3] Six potential jurors identified themselves as Spanish speaking. We will refer to them by letter, A through F.

1. Juror A. (# 0092)
In the opening round of voir dire the prosecutor asked Juror A what she would do if she disagreed with the interpreter's translation.
"[Prosecutor]: Do you think you would be able to just listen to what the interpreter says and not interpret for yourself?
[Juror A]: I don't know, because I know when somebody is translating, it's not really the same thing, you know, may be fluent, so I might interpret it in my own words.
[Prosecutor]: [Assume] you have a witness on the stand, and the witness says I was not there [and] the interpreter gets it completely wrong, and the interpreter interprets on behalf of the witness I was there, now what would you do in that particular situation?

*459 * * *
[Juror A]: It's hard for me to say it, because I would probably take whatever the person is saying as far as what I understood."
Later the trial court admonished the potential jurors they could not rely on their own interpretation of a witness's testimony but "[y]ou must follow the interpretation as given by a certified interpreter." The court then asked Juror A, "Can you do that?" Juror A responded "I will try. I will do my best."

2. Juror B (# 3532)
The prosecutor asked Juror B similar questions.
"[Prosecutor]: Will you be able to ignore the answer from the witness that's in Spanish and only listen to the English interpretation?

* * *
[Juror B]: Yeah. I think I would have a problem with that, because sometimes the way, for example, in the school district if we send the wrong message in a letter, it will affect the way parents read the letter, and I think it's very important, the way its interpreted, and I don't know if I'll be able to block it.
[Prosecutor]: Okay. Now, if the court were to admonish you that ... you have to ignore what you heard in Spanish ... you would be able to do that?
[Juror B]: Yeah. I think I would. It would bother me, but I would."
After the trial court gave the admonition described above, the court asked Juror B if she could abide by its instruction. Juror B answered "Yes."

3. Juror C (# 4511)
The prosecutor asked Juror C whether he would be able to put aside his knowledge of Spanish and consider only the interpreter's translation. He answered: "Okay. Uh-huh." After the court gave its admonition about the need to listen only to the interpreter's rendition of the witness's testimony Juror C was again asked if he could follow that instruction. He responded "Yes."

4. Jurors D (# 4185) and E (# 3604)
Jurors D and E expressed uncertainty about their ability to accept the interpreter's translation of the witness's Spanish testimony. They were both dismissed by the defense on peremptory challenges with no reasons given.

5. Juror F (# 0551)
When the trial court asked if anyone else on the jury panel spoke another language, Juror F responded: "Just Spanish." No one asked Juror F any questions about accepting the interpreter's Spanish translations.
The prosecutor used her first and fourth peremptory challenges to excuse Jurors A and B. After she challenged B the defendant requested a side bar and the following colloquy took place.
"[Defendant]: Your honor, as the court can see, the defendant is Hispanic and the People have excused . .. two Hispanics....
[The court]: You are talking about [Jurors A and B]?
[Prosecutor]: [A and B] We have gone back and forth as to whether or not they could accept the interpretation of the Spanish speaker. Both of them said it was hard to turn it off. [Juror C], who is still on the panel . .. indicated he would not have any problem.
[Defendant]: Your honor, I note that one of the jurors said-the one that the *460 People are trying to excuse now [Juror B], she said I could do it after the court inquired.
[The court]: Well, the People could exercise as long as it's not related.
[Defendant]: It's two Hispanics.
[The court]: [The prosecutor] was concerned about [Juror B's] response. Initially she may not be able to follow a certified interpreter's interpretation. I know that on the later question she said that she could. The fact is the People were not comfortable with her initial response. I will find that as to [Juror A and Juror B] they were excused for cause."
As finally constituted the jury consisted of two jurors who admitted fluency in Spanish. One of them, Juror C, testified without reservation he would follow the interpreter's translation. The other, Juror F, had not been asked any questions pertaining to the interpreter.

B. Substantial Evidence Supports The Trial Court's Finding Jurors A and B Were Not Excused On The Basis Of Group Bias Against Hispanics.
The rules for determining a Wheeler motion are well established and there is no need to repeat them all. Three of those rules are pertinent here. (1) Where, as here, the prosecutor jumps in with explanations for her challenges without waiting for the trial court to determine if a prima facie case of group bias has been established the issue of a prima facie case is moot and we proceed to the ultimate question of intentional discrimination.[4] (2) The prosecutor need only offer a genuine, group-neutral explanation reasonably related to the particular case being tried.[5] (3) Where, as here, the trial court has made a "sincere and reasoned attempt" to evaluate the prosecutor's reasons for challenging a prospective juror we review the trial court's findings for substantial evidence.[6]
Although the issue appears to be one of first impression in California, courts in other jurisdictions have uniformly held the fact the prosecutor distrusts a juror or finds the juror's responses not credible is a sufficiently race-neutral reason for using a peremptory challenge.[7] The United States Supreme Court's opinion in Hernandez v. New York[8] is directly on point. After the prosecutor used four of nine peremptory challenges to excuse Hispanic jurors Hernandez claimed the prosecution was excusing *461 Hispanics on the basis of their race. Without waiting for a ruling on whether Hernandez had established a prima facie case of racial discrimination the prosecutor volunteered his reasons for striking the four Hispanics. Hernandez did not dispute the validity of the challenge to two of the jurors but concentrated on the removal of the other two. As to them the prosecutor stated he felt "very uncertain that they would be able to listen and follow the interpreter."[9] He explained his uncertainty was based on the facts "[t]hey each looked away from me and said with some hesitancy that they would try, not that they could, but that they would try to follow the interpreter[.]"[10] The Supreme Court held "[t]he prosecutor here offered a race-neutral basis for these peremptory strikes [by dividing] potential jurors into two classes: those whose conduct during voir dire would persuade him they might have difficulty in accepting the translator's rendition of Spanish-language testimony and those potential jurors who gave no such reason for doubt." [11]
Thus in Hernandez, as in the case before us, the critical issue is whether the trial court justifiably accepted the prosecutor's race-neutral explanation as the true reason for the peremptory challenges and not a pretext for racial discrimination. In this respect there are similarities and differences between Hernandez and our case which we discuss below.
Initially we find the trial court made a "sincere and reasoned attempt" to evaluate the prosecutor's reasons for challenging Jurors A and B. The court correctly recognized the close connection between the prosecutor's proffered reasons for excusing these two jurors and an issue in the trialthe ability of the Spanish speaking jurors to accept the interpreter's version of the witnesses' testimony. The court also listened and responded when defendant argued Juror B stated unequivocally she would follow the court's instruction after the court explained why adherence to the interpreter's translation was so important. While acknowledging Juror B had changed her response after the court's admonition the court pointed out: "The fact is the People were not comfortable with her initial response."
We also conclude substantial evidence supports the trial court's decision to credit the prosecutor's race-neutral reasons for striking Jurors A and B.
In the present case, as in Hernandez, the trial court had the opportunity to observe the prosecutor's demeanor just as the prosecutor had the opportunity to observe the demeanor of Jurors A and B.[12] Furthermore, in this case, as in Hernandez, "the prosecutor defended [her] use of peremptory challenges without being asked to do so by the judge." [13] Both of these factors "could be taken as evidence of the prosecutor's sincerity." [14]
There are additional factors in the present case which support the prosecutor's credibility. As previously noted, the prosecutor's grounds for excluding Jurors A and B were closely related to the case *462 being tried.[15] Further, the prosecutor's reasons were based on objective factors the jurors' answers to the questions posed on voir direrather than subjective factors such as the jurors'"body language,"[16] dress,[17] appearance of stress [18] or questionable inferences based on their life style or occupation.[19] The defense also excused jurors who waffled on their ability to restrict themselves to the interpreter's Spanish translation.[20] Moreover, Juror A*s failure to ever commit herself to the interpreter's translations was sufficient cause for the trial court to have excused her on its own motion if the prosecution had not done so first.[21] Finally, the fact Juror B ultimately agreed to abide by the trial court's instruction does not show the prosecutor was insincere in her reason for excusing her. In Hernandez the Supreme Court upheld I the lower court's finding regarding the ; prosecutor's credibility even though the two challenged jurors finally answered they would follow the interpreter's translation.[22]
To be sure, there are things in the record which might arguably support a finding the prosecutor was insincere in her proffered reasons for excusing Jurors A and B. The prosecutor's purported doubt the jurors would follow the interpreter's translation, even after the trial court's firm admonition they must do so, contradicts one of the basic tenets of our system of trial by jury which is frequently cited by attorneys for the Peoplethe presumption jurors "generally understand and faithfully follow instructions."[23] In Hernandez the prosecutor based his peremptory challenges on "the specific responses and the demeanor of the two individuals[.]"[24] The prosecutor in our case did not cite any specific aspect of the jurors' demeanor which led her to doubt the credibility of their ultimate promise to follow the trial court's instruction.[25] Finally, the fact the prosecutor did not question Juror F about the ability to accept the translations given in court is some, albeit in this case slight, evidence of the prosecutor's intent to discriminate against Hispanics.[26]
*463 A finding of substantial evidence, however, does not require or imply a finding of no contrary evidence.[27] Here the trial court concluded the prosecutor had put forth a valid, race-neutral reason for excluding Jurors A and B and that this was the prosecutor's true reason, not a mere pretext to cover up intentional discrimination against Hispanics. We find no basis for disturbing either conclusion.

II. THE TRIAL COURT COMMITTED PREJUDICIAL ERROR WHEN IT IMPOSED THE UPPER TERM SENTENCE BASED ON FACTS NOT FOUND BY THE JURY.
In Apprendi v. New Jersey,[28] and Blakely v. Washington[29] the United States Supreme Court set out a bright-line rule: "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."[30] In People v. Black[31] our Supreme Court held California's determinate sentencing law did not violate the rule announced in Apprendi and Blakely.
On the authority of People v. Black the trial court sentenced Cardenas to the upper term of five years for the robbery based on the court's own determination the robbery involved the aggravating factors of "planning" and "sophistication."[32]
Following Cardenas' sentencing, the United States Supreme Court overruled Black in Cunningham v. California[33] which held California's determinate sentencing law violated the defendant's Sixth Amendment right to a jury trial for the same reason as the state sentencing schemes struck down in Apprendi and Blakely: the law "authorizes the judge, not the jury, to find the facts permitting an upper term sentenced][34]
"While `[t]hat should be the end of the matter,'"[35] since the trial court relied solely on facts not found by the jury to impose the upper term on Cardenas, the People nevertheless advance their usual troika of appellate arguments: any error was waived; there was no error; if there was error it was harmless. The first argument is frivolous and the latter two are not persuasive.

A. The Error Was Not Waived.
The People contend Contreras waived or forfeited any Apprendi/Blakely *464 error because he did not object to his sentence on Sixth Amendment grounds in the trial court. This argument is specious because at the time of Cardenas' sentencing Black was the "law of the land [of California]" and under the rule of Auto Equity[36] the trial court had no choice but to follow it. A criminal defendant cannot be deemed to have waived or forfeited a legal argument which was not recognized at the time of his trial.[37]

B. The Trial Court Erred When It Imposed The Upper Term Based On Its Own Factual Determination The Crime Involved "Planning" And "Sophistication."
At the sentencing hearing the People urged the trial court to impose the upper term for three reasons: the defendant induced others to participate in the commission of the crime, the defendant occupied a position of leadership in its commission, and the manner in which the crime was committed indicated planning and sophistication.[38] The trial court speculated the victim might be "somewhat mentally retarded" and, therefore, particularly vulnerable.[39] Defense counsel pointed out there was no evidence Konopka was retarded and suggested he might simply be a person who talks slowly. The court ultimately concluded the argument Cardenas induced others to participate in the crime was "not a very persuasive argument." "The main argument that is persuasive," the court found, "is that there was a planning, there was sophistication, because there was retaliation for a conduct done by [the victim].... It took [Cardenas] at least a month or two to think about it, plan it, and then execute it." Cardenas' three prior misdemeanor convictions were never mentioned by the prosecutor or the trial court as a ground for imposing the upper term.[40]
When the Supreme Court held "[e]xcept for a prior conviction, `any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt'"[41] it clearly intended the facts actually relied upon by the trial court in increasing the penalty must be found by a jury upon proof beyond a reasonable doubt except where the fact relied upon is the defendant's prior convictions. The People attempt to turn this rule on its head. They argue the "prior conviction" exception to the rule means the mere presence of two or more prior convictions provides the trial court with the authority to impose the upper term sentence on the defendant and therefore the Sixth Amendment is not implicated even if the court ultimately chooses not to base the upper term on the priors but chooses instead to base it on facts which were not determined by the jury.
As authority for this interpretation of Apprendi Blakely and Cunningham the People cite the well-established rule "even *465 a single aggravating circumstance is enough to render [the defendant] eligible for the upper term."[42]
The People have not cited, nor have we found, any case holding the mere fact the trial court could have based the upper term on the defendant's prior convictions, without the issue being determined by a jury, means the trial court may base the upper term on other aggravating factors without those factors being determined by a jury. One of the flaws in this argument is that even if the trial court could have imposed the upper term on Cardenas based solely on his prior convictions it did not do so. Indeed, it never mentioned his prior convictions in explaining why it was sentencing him to the upper term.[43] The fact the trial court could have hypothetically imposed the upper term without committing error begs the question whether the court committed error in imposing the upper term in the way it did.[44] In other words, establishing what punishment is available by law and setting a specific punishment within the bounds of that law are two different things.[45] Moreover, the People's argument is precluded by Penal Code section 1170, subdivision (b) and rule 4.406, subdivisions (a) and (b) of the California Rules of Court which require the trial court to state on the record its reasons for imposing the upper term.[46] Thus, if the court intended to rely on the defendant's prior convictions it had to say so on the record.

C. The Trial Court's Error Was Prejudicial.
When a trial court has relied on a mix of factors in imposing the upper term, some of which required a jury finding, such as the defendant played a leadership role or the victim was particularly vulnerable, and some of which did not, such as the defendant's prior convictions, an appellate court may find the error harmless if, for example, the trial court cited the defendant's numerous prior convictions and declared on the record this factor alone would justify imposing the upper term.[47]
An appellate court may also find harmless the imposition of an upper term based on factors which should have gone to the jury if the court can say beyond a reasonable doubt that had the factors been submitted to the jury, the jury would have found them true.[48]
Neither of these grounds for finding harmless error apply to the present case. The trial court did not rely on a mix of factors in sentencing Cardenas to the *466 upper term. It relied exclusively on its finding the crime involved "planning" and "sophistication." As previously mentioned, the People did not urge Cardenas' prior misdemeanors as a basis for the upper term and the trial court did not mention them. While a jury could have found the crime involved planning and sophistication we cannot say beyond a reasonable doubt it would have done so. Cardenas could have been brooding for months about how to get even with Konopka for costing him his job but only decided on the spur of the moment, when he saw Konopka on the street, to rob him. Cardenas might have been at his former employer's business to try to get his old job back, not to rob Konopka. Furthermore, if this robbery was planned it was planned badly and was certainly not sophisticated. Cardenas and Konopka knew each other but Cardenas did not try to disguise his identity. On the contrary, just in case Konopka did not recognize him Cardenas told Konopka he was taking his wallet in retaliation for him "ratting" on Cardenas at work. Furthermore, the robbery took place in broad daylight in front of Konopka's workplace where there were likely to be witnesses who would recognize Cardenas as a former employee.
For all of the above reasons, the sentence must be vacated and the matter remanded for resentencing in accordance with the law.

DISPOSITION
The conviction is affirmed. The sentence is vacated and the cause remanded to the trial court with directions to conduct a new sentencing hearing and sentence Cardenas in accordance with law.
I concur: ZELON, J.
PERLUSS, P.J., concurring.
In my view (see People v. Velasquez (2007) 152 Cal.App.4th 1503, 62 Cal. Rptr.3d 164), under Blakely v. Washington (2004) 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 and Cunningham v. California (2007) 549 U.S. ___, 127 S.Ct. 856, 166 L.Ed.2d 856 a trial court's finding of a single aggravating circumstance based on the defendant's criminal history that falls within the recidivism exception to the Sixth Amendment's jury-trial requirement (Cunningham, at p. 868; see Almendarez-Torres v. United States (1998) 523 U.S. 224, 118 S.Ct. 1219, 140 L.Ed.2d 350; Blakely, at p. 301, 124 S.Ct. 2531) "exposes" the defendant to the upper term under the determinate sentencing law and thus authorizes the imposition of an upper term sentence. (See People v. Osband (1996) 13 Cal.4th 622, 730, 55 Cal.Rptr.2d 26, 919 P.2d 640 [single valid factor in aggravation supports imposition of upper term].) As a result, even if the trial judge relies on other aggravating factors not established by means that satisfy the governing Sixth Amendment authorities in exercising his or her discretion to impose an upper term sentence, the defendant's Sixth and Fourteenth Amendment rights under Cunningham are not violated. (See Cunningham, at pp. 863-864["[t]his Court has repeatedly held that, under the Sixth Amendment, any fact that exposes a defendant to a greater potential sentence must be found by a jury, not a judge"];[1]People *467 v. Reyes (2007) 150 Cal.App.4th 735, 739, 58 Cal.Rptr.3d 692 [because existence of single aggravating circumstance established by constitutionally permissible means is sufficient to support imposition of upper term as statutory maximum for offense, "trial court properly made its own additional findings regarding aggravating circumstances not submitted to the jury in support of its discretionary sentencing decision"].)
As the majority explains, however, although the probation report in this case indicated Guillermo Cardenas had numerous, serious adult convictions and juvenile adjudications, the trial court neither made any findings regarding Cardenas's prior criminal history nor indicated any reliance whatsoever on recidivism factors in selecting the upper term sentence. Accordingly, although I disagree with aspects of the majority's analysis of Cardenas's claim of Blakely I Cunningham sentencing error, I concur in the conclusion the sentence must be vacated and the matter remanded for resentencing.
NOTES
[1] People v. Wheeler (1978) 22 Cal.3d 258, 148 Cal.Rptr. 890, 583 P.2d 748.
[2] Cunningham v. California (2007) 549 U.S. ___, 127 S.Ct. 856, 166 L.Ed.2d 856.
[3] It is misconduct for a juror to rely on her own translation instead of the interpreter's translation. (People v. Cabrera (1991) 230 Cal.App.3d 300, 303-304, 281 Cal.Rptr. 238.)
[4] Hernandez v. New York (1991) 500 U.S. 352, 359, 111 S.Ct. 1859, 114 L.Ed.2d 395; People v. Welch (1999) 20 Cal.4th 701, 745-746, 85 Cal.Rptr.2d 203, 976 P.2d 754.
[5] People v. Fuentes (1991) 54 Cal.3d 707, 718, 286 Cal.Rptr. 792, 818 P.2d 75.
[6] People v. McDermott (2002) 28 Cal.4th 946, 971, 123 Cal.Rptr.2d 654, 51 P.3d 874.
[7] Hernandez v. New York, supra, 500 U.S. at page 361, 111 S.Ct. 1859; State v. Hodge (1999) 248 Conn. 207, 726 A.2d 531, 546["[A] prosecutor is not bound to accept the venire-person's reassurances, but, rather, is entitled to rely on his or her own experience, judgment and intuition in such matters."]; Lynch v. State (Miss.2004) 877 So.2d 1254, 1276["[D]istrust of a potential juror is a raceneutral reason for striking that juror."]; State v. Tucker (La.App.1991) 591 So.2d 1208, 1215 ["The fact the state does not believe some of a prospective juror's answers is a racially neutral reason for exercising a peremptory challenge."]; Stephens v. State (Ala.Cr.App.1990) 580 So.2d 11, 20["[T]he fact that a prosecutor distrusts a juror or finds his responses not to be credible has also been held to be a sufficiently race-neutral reason for using a peremptory challenge."].
[8] Hernandez v. New York, supra, 500 U.S. at page 361, 111 S.Ct. 1859.
[9] Hernandez v. New York, supra, 500 U.S. at page 356, 111 S.Ct. 1859.
[10] Hernandez v. New York, supra, 500 U.S. at page 356, 111 S.Ct. 1859.
[11] Hernandez v. New York, supra, 500 U.S. at page 361, 111 S.Ct. 1859.
[12] Hernandez v. New York, supra, 500 U.S. at page 369, 111 S.Ct. 1859.
[13] Hernandez v. New York, supra, 500 U.S. at page 369, 111 S.Ct. 1859.
[14] Hernandez v. New York, supra, 500 U.S. at page 370, 111 S.Ct. 1859.
[15] People v. Ervin (2000) 22 Cal.4th 48, 74-75, 91 Cal.Rptr.2d 623, 990 P.2d 506.
[16] People v. Gutierrez (2002) 28 Cal.4th 1083, 1125, 124 Cal.Rptr.2d 373, 52 P.3d 572.
[17] People v. Allen (2004) 115 Cal.App.4th 542, 551, 9 Cal.Rptr.3d 374.
[18] People v. Gutierrez, supra, 28 Cal.4th at page 1124, 124 Cal.Rptr.2d 373, 52 P.3d 572.
[19] In People v. Young (2005) 34 Cal.4th 1149, 1174, 24 Cal.Rptr.3d 112, 105 P.3d 487 the prosecution challenged V.S., an African-American female, who worked as an insurance claims specialist and sometimes "assisted defense attorneys in preparation for litigation and arbitration." Writing for the court, former Justice Brown suggested "the prosecutor might reasonably have challenged V.S. on the basis that she might be overly defense oriented [.]" (Italics added.)
[20] See discussion of Jurors D and E, above.
[21] If the trial court finds a juror is "unable to perform his or her duty ... the court may order the juror to be discharged." (Pen.Code § 1089.)
[22] Hernandez v. New York, supra, 500 U.S. at page 357, footnote 1, 111 S.Ct. 1859.
[23] People v. Smith (2007) 40 Cal.4th 483, 51-7, 54 Cal.Rptr.3d 245, 150 P.3d 1224.
[24] Hernandez v. New York, supra, 500. U.S. at page 360, 111 S.Ct. 1859. (Italics added.)
[25] Compare Hernandez v. New York, supra, 500 U.S. at page 356, 111 S.Ct. 1859. [In answering the prosecutor's questions whether they would follow the interpreter's translations "[t]hey each looked away" from the prosecutor and answered with "some hesitancy."]
[26] People v. Bell (2007) 40 Cal.4th 582, 597, 54 Cal.Rptr.3d 453, 151 P.3d 292. Given the fact the prosecutor questioned all the other potential jurors who stated they spoke Spanish it seems likely the prosecutor simply overlooked Juror F.
[27] In re Amanda B. (2007) 149 Cal.App.4th 342, 56 Cal.Rptr.3d 901.
[28] Apprendi v. New Jersey (2000) 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435.
[29] Blakely v. Washington (2004) 542 U.S. 296, 301, 124 S.Ct. 2531, 159 L.Ed.2d 403.
[30] The court has also recognized an exception when the facts supporting an upper term are admitted by the defendant. (Blakely v. Washington, supra, 542 U.S. at page 303, 124 S.Ct. 2531.) This exception does not apply to this case.
[31] People v. Black (2005) 35 Cal.4th 1238, 29 Cal.Rptr.3d 740, 113 P.3d 534.
[32] California Rules of Court, rule 4.421, subdivision (a)(8).
[33] Cunningham v. California, supra, 549 U.S. ___, 127 S.Ct. 856, 166 L.Ed.2d 856; Black v. California (2007)  U.S. ___, 127 S.Ct. 1210, 167 L.Ed.2d 36.
[34] Cunningham v. California, supra, 549 U.S. ___, 127 S.Ct. at page 871, 166 L.Ed.2d 856.
[35] Cunningham v. California, supra, 549 U.S. ___, 127 S.Ct. at page 868, 166 L.Ed.2d 856, quoting Blakely, supra, 542 U.S. at page 313, 124 S.Ct. 2531".
[36] Auto Equity Sales, Inc. v. Superior Court (1962) 57 Cal.2d 450, 455, 20 Cal.Rptr. 321, 369 P.2d 937.
[37] People v. Boyette (2002) 29 Cal.4th 381, 432, 127 Cal.Rptr.2d 544, 58 P.3d 391.
[38] California Rules of Court, rule 4.421, subdivision (a)(4), (5).
[39] California Rules of Court, rule 4.421, subdivision (a)(3).
[40] See California Rules of Court, rule 4.421, subdivision (b)(2), [prior convictions "numerous or of increasing seriousness"].
[41] Cunningham v. California, supra, 127 S.Ct. at page 868, quoting Apprendi, supra, 530 U.S. at page 490, 120 S.Ct. 2348. (Italics added.)
[42] People v. Burch (2007) 148 Cal.App.4th 862, 873, 55 Cal.Rptr.3d 892; and see Penal Code section 1170, subdivision (b).
[43] See discussion at pages 463-65, above.
[44] See People v. Waymire (2007) 149 Cal. App.4th 1448, 1455, 60 Cal.Rptr.3d 271, review granted.
[45] See Apprendi, supra, 530 U.S. at p. 519, 120 S.Ct. 2348, footnote omitted. (Thomas, J., cone.)
[46] Penal Code section 1170, subdivision (b) states: "The court shall set forth on the record the facts and reasons for imposing the upper or lower term." California Rules of Court, rule 4.406, subdivision (b)(4) requires the trial court, in selecting a term other than the middle term, to give a statement of its reasons and subdivision (a) requires the court to "state [on the record] in simple language the primary factor or factors that support the exercise of discretion."
[47] People v. Perez (2007) 148 Cal.App.4th 353, 372, 55 Cal.Rptr.3d 683, review granted.
[48] Washington v. Recuenco (2006) 548 U.S. ___, 126 S.Ct. 2546, 2551-2553, 165 L.Ed.2d 466, and see this court's majority and dissenting opinions in People v. Diaz (2007) 150 Cal.App.4th 254, 58 Cal.Rptr.3d 287.
[1] Had the Supreme Court intended to hold that all aggravating factors upon which the trial court bases its decision to impose the upper term must be established by means that satisfy the Sixth Amendment, I have no doubt Justice Ginsburg would have written the Court's opinion in Cunningham to clearly impose that requirement, rather than speaking in terms of the existence of a constitutionally proper aggravating factor that exposes the defendant to the upper term sentence or situations in which the upper term is authorized, language that plainly connotes the existence thereafter of a sentencing determination to be made by the trial court after reviewing circumstances in aggravation and mitigation not submitted to the jury.