Filed 5/24/24  P. v. Rojas CA1/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

|  |  |
|---|---|
| THE PEOPLE,<br><br>　　　　Plaintiff and Respondent,<br><br>v.<br><br>ELVIS ALI ROJAS,<br><br>　　　　Defendant and Appellant. | A167867<br><br>(Del Norte County Super. Ct. No. CRPB225095) |

A jury convicted Elvis Ali Rojas of possession of a weapon in state prison.  (Pen. Code, § 4502, subd. (a).)  On appeal, he argues his conviction must be reversed because the trial court failed to sua sponte instruct the jury on how to evaluate circumstantial evidence (CALCRIM No. 224).  We remand to correct a clerical error in the abstract of judgment but otherwise affirm.

### BACKGROUND

Rojas is an inmate at the Pelican Bay State Prison, where he is serving a lengthy sentence for various offenses, including assault with a deadly weapon committed by a prisoner with an enhancement for great bodily injury.  (Pen. Code, §§ 4501, 12022.7.)

In June 2022, correctional officers conducted a random search of a "day room," a recreational area for inmates.  During such a search, inmates are ordered to lie on the ground and are systematically taken, a couple at a time,

1

to be searched in another room.  Once searched, inmates are placed in a concrete yard until remaining inmates can be searched.

Approximately 15 to 20 officers, including Officer Daniel Forkner, participated in the search.  Upon entering the day room, Forkner noticed an "inmate-manufactured weapon" — "rolled plastic sharpened to a point on one end and a handle on the other end with a string attached" — on the floor.  He motioned to Officer Alma Garza, who was recording the search, and had her record him picking up the weapon so they would know its exact location.[1]  When reviewing the footage, Forkner saw an inmate "reach into his waistband" and retrieve the weapon.  The inmate — whom Forkner did not recognize — placed the weapon on the floor, where Forkner later found it.

With the video playing for the jury, Forkner pointed out the person on the video who had the weapon and testified, "[h]e has a gray ball cap on, glasses, he has a black ponytail, white T-shirt, gray athletic shorts, and brown work boots."  He testified only one inmate in the day room fit that description.  The video showed Forkner picking up the weapon after the inmate who left it had already been taken away to be searched.  After reviewing the footage, Forkner went into the concrete yard to find the inmate.  He testified only one inmate in the yard matched the description — Rojas.  Forkner took photos of Rojas after detaining him, and the photos were shown to the jury.  Forkner identified Rojas in court as the person on the video.

Garza's testimony was consistent with that of Forkner.  She recounted recording the search and Forkner finding a weapon.  She also testified she reviewed the footage with Forkner, saw an inmate place the weapon on the

---

[1] There is no camera in the day room, but one was brought into the control booth overlooking the day room to record the search.  The prosecutor played the video at trial and during closing arguments.

2

ground where Forkner found it, and that only one inmate fit the description of the person seen on the video. Garza also testified the video showed nothing on the ground until the inmate put the weapon there. She further testified about footage taken of the concrete yard — which she reviewed with Forkner — and identified Rojas in the video as the inmate who dropped the weapon.

The jury convicted Rojas of possession of a weapon in state prison. (Pen. Code, § 4502, subd. (a).) The trial court found true two prior strike allegations. (*Id.*, § 667, subds. (b)–(i).) It sentenced Rojas to two additional years in prison — one year for the weapon possession conviction and one year for the strike prior — to run consecutive to any prison time he was already serving.

## DISCUSSION

Rojas contends reversal is required because the trial court failed to sua sponte instruct the jury with CALCRIM No. 224. No error appears.

During a conference concerning jury instructions, the trial court proposed to instruct the jury with CALCRIM No. 223, which defines direct and circumstantial evidence; neither party objected. Nor did anyone request the jury be instructed with CALCRIM No. 224, which concerns how to evaluate circumstantial evidence.

" 'Circumstantial evidence does not directly prove the fact to be decided, but is evidence of another fact or group of facts from which [the jury] may conclude the truth of the fact in question.' " (*People v. Anderson* (2007) 152 Cal.App.4th 919, 930.) When the prosecution substantially relies on circumstantial evidence to establish an element of the case, "the trial court has a sua sponte duty to give CALCRIM No. 223 . . . and CALCRIM No. 224." (*People v. Smith* (2008) 168 Cal.App.4th 7, 14, fn. omitted.) But a court has

no duty to give CALCRIM No. 224 when "the alleged circumstantial evidence is incidental to, and corroborative of, direct evidence." (*People v. Malbrough* (1961) 55 Cal.2d 249, 250–251 (*Malbrough*).) We independently review whether the trial court had a sua sponte duty to give CALCRIM No. 224. (*People v. Burch* (2007) 148 Cal.App.4th 862, 870.)

We conclude the trial court did not have a sua sponte duty to instruct the jury with CALCRIM No. 224. Direct evidence — the video recording and officers' testimony — established all the elements of the charge. The video depicted an inmate removing the weapon from his waistband and leaving it on the floor; it showed only one inmate was wearing brown work boots, gray shorts, white T-shirt, gray ball cap, and had a black ponytail; it also depicted Forkner retrieving the weapon from where the inmate left it. (*People v. Lund* (2021) 64 Cal.App.5th 1119, 1151 [video can constitute direct evidence].) Forkner also testified about the weapon. The circumstantial evidence — the officers' opinion that Rojas was the person depicted in the video and that nothing was on the ground until Rojas placed a weapon there — simply corroborated the direct evidence. As such, the court had no sua sponte duty to give CALCRIM No. 224. (*Malbrough, supra*, 55 Cal.2d at pp. 250–251.)

Rojas concedes the video footage constituted direct evidence but contends what happened was "difficult to see clearly" given the distance from which the footage was taken. He also notes that, when the prosecutor played the video during Garza's testimony, a juror commented, "It's still hard to see. If you ask me, you see he's moving there. I saw that object there now. . . . But how he got there, I don't see on that video." A juror — presumably the same one — moments later asked, "Can you zoom?" These comments do not

change our conclusion that the circumstantial evidence served to corroborate the direct evidence.[2] (*Malbrough*, *supra*, 55 Cal.2d at pp. 250–251.)

Notably, the prosecution's closing argument focused almost exclusively on the video footage of the incident. The prosecutor told the jury, "I'm just basically going to kind of show you what I think is important and how I have proven my case beyond a reasonable doubt." In going through the elements of the crime, the prosecutor relied on the video and told the jury what points in the footage were critical. For example, she argued that, at two minutes and 20 seconds into the video, the jury could see Rojas in possession of the weapon and trying to get rid of it. She also played the video during her argument, pointing out no weapon could be seen on the ground before Rojas put it there.

Additionally, the prosecutor argued the video belied Rojas's theory that someone might have slid or thrown the weapon underneath him. She also used the video to argue no other inmate in the day room had all of the "[d]escriptive elements" that Rojas had. Moreover, she argued that, at six minutes and 30 seconds into the video, the jury could see Forkner recover a weapon from where Rojas had left it. The prosecutor similarly focused on the video during her rebuttal, telling the jury, "nobody saw [Rojas] personally reach out and put the thing but it's on video," "[y]ou see it with your own eyes on video as to what happened," and "what's reasonable is what you see with your own eyes. And what you see with your own eyes is the Defendant

---

[2] Rojas also notes there was no fingerprint testing done on the weapon, other potential witnesses in the day room were not questioned, and his cell was not searched for tools that could be used in fashioning the weapon. This too does not alter our conclusion that direct evidence established the elements of the crime.

getting down on the ground, fidgeting at his waist, reaching out with his left hand, that there's more on the floor."

In sum, the prosecutor relied on the direct evidence to establish the elements of the crime, and the circumstantial evidence was incidental and corroborative. (*Malbrough, supra*, 55 Cal.2d at pp. 250–251.) Accordingly, in the absence of a request, the trial court had no obligation to instruct the jury with CALCRIM No. 224. (*Malbrough*, at pp. 250–251.)

We note an error in the abstract of judgment. The prior strike allegations (Pen. Code, § 667, subds. (b)–(i)) that were charged and found true by the trial court are not listed in section 3 of the abstract of judgment. We remand for the abstract of judgment to be corrected. (*People v. Rowland* (1988) 206 Cal.App.3d 119, 123.)

## DISPOSITION

We remand and order the trial court to amend the abstract of judgment to reflect the sentence for the prior strike allegations. In all other aspects, the judgment is affirmed.

_____
RODRÍGUEZ, J.

WE CONCUR:


_____
TUCHER, P. J.


_____
FUJISAKI, J.

A167867