Filed 2/24/15  P. v. Lee CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>TARA NALANI LEE,<br><br>    Defendant and Appellant. | H039678<br>(Santa Clara County<br>Super. Ct. No. C1231283) |

Defendant Tara Nalani Lee was convicted by jury trial of two counts of forgery (Pen. Code, § 470, subd. (d)).[1]  On appeal, she argues the trial court erred when it failed to give the jury an instruction on the sufficiency of the circumstantial evidence presented at trial.  She also argues the court erred in excluding the testimony of three defense witnesses.  Lastly, she claims the court should have stayed one of her convictions under section 654.

We conclude that although we agree with defendant that the trial court should have instructed the jury on how to weigh the circumstantial evidence introduced at trial, the error was harmless.  Furthermore, we find the court did not abuse its discretion when it excluded the defense witnesses' testimonies.  Lastly, defendant's section 654 claim is unripe, because the trial court suspended imposition of sentence.  Therefore, there is no punishment that can be stayed.  We affirm the judgment.

---

[1] Further unspecified statutory references are to the Penal Code.

**FACTUAL AND PROCEDURAL BACKGROUND**

*Procedural History*

On May 2, 2012, an information was filed charging defendant with two counts of felony forgery (§ 470, subd. (d)).

The People filed a motion in limine to exclude the testimony of three defense witnesses, Larry Noon, Shari Flick, and Eric Nagel, arguing their testimonies would be irrelevant. Defense counsel requested he be allowed to reserve Noon's testimony for potential impeachment purposes. The trial court stated it would consider this request on a "case-by-case basis" if necessary, and granted the People's motion to exclude the testimony of all three witnesses.

Jury trial on the charges began on March 18, 2013.

*The Evidence*

In 2011, defendant was employed as a server at Tapestry, a restaurant located in Los Gatos, California. Tapestry was owned by Gary Messick. On October 28, 2011, Messick wrote a tip check to defendant for $319. On November 5, 2011, he wrote a second tip check to defendant for $125.28. Defendant had worked at Tapestry for several months. She left her position sometime in the fall of 2011. She intermittently returned to the restaurant to fill in for other servers until she quit for a final time in October 2011 following a disagreement with Messick about her schedule.

Messick distributed cash tips after the end of each shift, but credit card tips were distributed by weekly tip checks handwritten by Messick. Messick would either hand the checks to employees in person or leave the checks in the cash drawer. The cash drawer was accessible to all Tapestry servers and employees. Messick did not need to be present for the cash drawer to be opened, and many employees had keys to the restaurant. Messick could not recall if he handed defendant the tip checks or if he mailed the checks to her address.

At some point in January 2012, Bank of the West notified Messick that the restaurant's checking account had insufficient funds. Messick compared a spreadsheet he had compiled of the tip amounts to the bank's check copies and discovered the two checks he had given to defendant had been altered. The check for $319 had been altered and cashed for $3,019, and the check for $125.28 had been altered and cashed for $1,025.28. Messick asserted he did not alter these checks himself. Messick did not have any carbon copies of the checks in his possession, and only the bank's scanned copies of the checks were available at trial.

A financial crimes investigator for the bank determined the two checks had been deposited through an ATM on the same day, November 11, 2011, to a checking account with defendant's name.

John Barnes, a server who used to work at Tapestry, explained that Messick did not employ precise bookkeeping practices and disputes over tip amounts were not uncommon. Barnes noted the checks deposited in defendant's account did not bear any indicia of what time period they were meant to cover. Barnes said he typically received tip checks ranging anywhere from $200 to $600 and would sometimes receive over $700 if there were several large events at the restaurant. Barnes said he would have been surprised if he had received a check for $3,000 in tips, but a tip check for $1,000 could be feasible if the restaurant had a few large parties. Barnes described defendant as a "good acquaintance" and a "good co-worker" but not a close friend. Barnes said he thought defendant was truthful.

An investigating officer testified that he attempted to compare defendant's signature with the signature on the altered checks. However, the officer found the signature on the check copy to be illegible and recommended obtaining the original check. A fraud investigator at the bank confirmed to the officer that the original checks were not available, because they had been shredded by the bank.

3

*The Verdict and Sentence*[2]

On March 21, 2013, the jury returned guilty verdicts on both counts of forgery. The trial court suspended imposition of sentence and placed defendant on three years of formal probation. Defendant was placed on electronic monitoring, sentenced to 30 days of weekend work and was ordered to pay victim restitution of $3,159.31. Defendant appealed.

## DISCUSSION

1. *Instructional Error*

Defendant claims the trial court erred when it instructed the jury with the less inclusive instruction on circumstantial evidence, CALCRIM No. 225, instead of the more inclusive instruction, CALCRIM No. 224.

"Questions relating to the validity and impact of the instructions given to the jury are entitled to de novo review. We review the instructions independently because the underlying question is one of law and the application of legal principles." (*People v. Burch* (2007) 148 Cal.App.4th 862, 870.) "A trial court has the duty to sua sponte instruct 'on general principles of law that are closely and openly connected with the facts presented at trial' and that are necessary for a jury's understanding of the case." (*Ibid.*, quoting *People v. Ervin* (2000) 22 Cal.4th 48, 90.) For example, "[a] trial court has a sua sponte duty to give CALJIC No. 2.01[3] in criminal cases 'where circumstantial evidence

---

[2] After the prosecution rested its case, defense counsel moved to dismiss all charges pursuant to section 1118.1. This motion was denied.

[3] "CALCRIM No. 224 corresponds to [former] CALJIC No. 2.01 and CALCRIM No. 225 corresponds to [former] CALJIC No. 2.02. Case law addressing CALJIC instructions is still generally applicable to the corresponding CALCRIM instruction." (*People v. Contreras* (2010) 184 Cal.App.4th 587, 591, fn. 4, citing *People v. Samaniego* (2009) 172 Cal.App.4th 1148, 1171, fn. 12.)

4

is substantially relied upon for proof of guilt . . . .' " (*People v. Johnwell* (2004) 121 Cal.App.4th 1267, 1274.)

Both CALCRIM Nos. 224 and 225 instruct the jury on how to consider circumstantial evidence. However, CALCRIM No. 225 advises a jury only on how to evaluate circumstantial evidence to prove a defendant's intent or mental state (*People v. Cole* (2004) 33 Cal.4th 1158, 1222), whereas CALCRIM No. 224 discusses more generally how a jury should consider circumstantial evidence that is relied on for proof of guilt (*People v. Rogers* (2006) 39 Cal.4th 826, 885 (*Rogers*)). In short, " 'CALCRIM No. 224 is more inclusive. [Citation.]' [Citation.] CALCRIM No. 224 'is the proper instruction to give unless the only element of the offense that rests substantially or entirely on circumstantial evidence is that of specific intent or mental state.' " (*People v. Contreras*, *supra*, 184 Cal.App.4th at p. 592.)

Here the jury was instructed on two alternate theories of forgery. First, the jury was instructed on CALCRIM No. 1904, which provides that in order to convict a defendant of forgery the People must prove: (1) the defendant altered a check and (2) when defendant did that act she had the specific intent to defraud. Second, the jury was instructed on CALCRIM No. 1905, which provides that a crime of forgery is committed when: (1) the defendant passed or used an altered check, (2) the defendant knew the check was altered, and (3) when defendant passed or used the check, she intended that the check be accepted as genuine and she intended to defraud. Lastly, the jury was instructed on CALCRIM No. 1906, which instructs the jury that in order to convict defendant of committing forgery, all jurors must agree that defendant committed forgery under at least one of the theories presented by the prosecution. However, the jury need not reach a consensus on which theory of the crime was proved.

We agree with defendant that the prosecution used circumstantial, not direct, evidence to prove elements for both theories of forgery. The two checks at issue were

5

made out to defendant and copies of the checks were submitted into evidence to show they were altered. However, there were no witnesses that saw defendant alter the checks. Nor was there any direct evidence that defendant was the one who deposited the checks into her account. Therefore, the trial court erred when it failed to instruct on CALCRIM No. 224. (See *Rogers*, *supra*, 39 Cal.4th at p. 885.) The circumstantial evidence was not relied on solely to prove defendant's intent or mental state but also to prove she altered and deposited the checks.

However, even though the court erred when it failed to instruct the jury with CALCRIM No. 224, reversal is only required if it is reasonably probable that defendant would have obtained a more favorable result had the error not occurred. (*People v. Watson* (1956) 46 Cal.2d 818, 836.)[4] We find the error was not prejudicial.

First, since CALCRIM No. 225 was given, the trial court's failure to instruct with CALCRIM No. 224 could have only affected the jury's deliberation regarding the identity of the perpetrator. (See *Rogers*, *supra*, 39 Cal.4th at p. 886 ["[b]ecause CALJIC No. 202 was given, the failure to give CALJIC No. 2.01 could have affected only the issue of identity"].) The evidence introduced by the People to establish defendant was the one who forged or passed the checks was circumstantial but strong. The checks were made out to defendant and were deposited into an account with defendant's name using an ATM, meaning that whoever deposited the checks must have known the PIN number to the account.

---

[4] Defendant argues that when there is a violation of a defendant's federal constitutional rights, a reviewing court must apply the more stringent standard set forth under *Chapman v. California* (1967) 386 U.S. 18 to determine whether there is any possibility that the alleged error may have contributed to the guilty verdict in the case. However, the California Supreme Court has used the *Watson* standard when reviewing whether failure to instruct the jury on CALJIC No. 2.01, the predecessor to CALCRIM No. 224, should have been given. (*Rogers*, *supra*, 39 Cal.4th at p. 886.)

Additionally, the jury could not have found that defendant had the specific intent to defraud or to pass the altered checks and, at the same time, found that she did not commit the acts necessary for the offense. The jury was properly instructed with CALCRIM No. 225, which informs the jury that it cannot rely on circumstantial evidence to prove a defendant's intent or mental state if it can be reasonably inferred from the evidence that there was no criminal intent. Based on this instruction, the jury must have determined defendant had the specific intent necessary to find her guilty of the forgery convictions.

However, defendant argues that because the jury was not properly instructed with CALCRIM No. 224, it is possible that jurors may have had reasonable doubt she forged or altered the checks. She also argues that "[i]f a reasonable doubt existed that [defendant] altered the checks, it follows that she might not have knowingly deposited altered checks." We are not persuaded.

The jury was instructed on both CALCRIM Nos. 223 and 225. CALCRIM No. 223 instructs the jury on both direct and circumstantial evidence, stating in pertinent part that "[b]oth direct and circumstantial evidence are acceptable types of evidence to prove or disprove the elements of a charge, including intent and mental state and acts necessary to a conviction, and neither is necessarily more reliable than the other." Although CALCRIM No. 225 is less inclusive than CALCRIM No. 224 since it instructs the jury specifically on the use of circumstantial evidence to prove a mental state, it also contained the more general language that "[b]efore you may rely on circumstantial evidence to conclude that a fact necessary to find defendant guilty has been proved, you must be convinced that the People have proved each fact essential to that conclusion beyond a reasonable doubt." This is in addition to the instructions given on reasonable doubt (CALCRIM No. 220), which reiterated to the jury that unless the People proved defendant's guilt beyond a reasonable doubt, she was entitled to an acquittal.

7

Considering these instructions as a whole, it appears the jury was cautioned on the proper use and weight of circumstantial evidence and was also properly advised of the People's burden of proof. Accordingly, the trial court's failure to instruct the jury with CALCRIM No. 224 would have been harmless beyond a reasonable doubt. (See *People v. Chaffin* (2009) 173 Cal.App.4th 1348, 1353.)

Lastly, we reject defendant's claim that the trial court's instructional error deprived her of her right to due process. As our Supreme Court articulated in *Rogers*, "[w]e doubt the common law right to a circumstantial evidence instruction rises to the level of a liberty interest protected by the due process clause. [Citation.] In any event, any federal constitutional error would be harmless beyond a reasonable doubt for the reasons expressed above." (*Rogers*, *supra*, 39 Cal.4th at p. 887.)

2. *Exclusion of Witness Testimonies*

Next, defendant argues the trial court erred when it excluded the testimonies of three defense witnesses, Noon, Flick, and Nagel.

Evidence Code section 352 states: "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."

" 'Under Evidence Code section 352, the trial court enjoys broad discretion in assessing whether the probative value of particular evidence is outweighed by concerns of undue prejudice, confusion or consumption of time. [Citation.]' [Citation.] A trial court's discretionary ruling under Evidence Code section 352 will not be disturbed on appeal absent an abuse of discretion. [Citation.] ' "[T]he latitude section 352 allows for exclusion of impeachment evidence in individual cases is broad. The statute empowers courts to prevent criminal trials from degenerating into nitpicking wars of attrition over collateral credibility issues." ' " (*People v. Lewis* (2001) 26 Cal.4th 334, 374-375.)

8

Furthermore, where evidence would impeach a witness on a collateral matter and is "only slightly probative of [the witness'] veracity, application of Evidence Code section 352 to exclude the evidence [does] not infringe [a defendant's] constitutional right to confront the witnesses against him." (*People v. Jennings* (1991) 53 Cal.3d 334, 372.)

In this particular case, the People filed a motion in limine seeking to exclude Noon, Flick, and Nagel's testimonies, arguing they were irrelevant.

The People's motion summarized the witnesses' testimonies as follows:

Noon was an investor in Messick's restaurant and was familiar with other investors in the business. Noon stated that he had not recouped his investment in the restaurant and felt that Messick had "buried his head in the sand" regarding the restaurant's debt.

Flick owned the building that housed the Tapestry restaurant and was going to testify that Messick was behind on rent. Flick obtained a monetary judgment against Messick and believed that when the restaurant was open it was "hard to know what was going on there."

Nagel was another investor in Messick's restaurant. Nagel said he discovered that Messick was paying himself a salary of $150,000. Nagel had invested $50,000 in the restaurant but was owed a total of $100,000 including interest. Nagel had been unable to reach Messick to discuss his investment and had the opinion that defendant would not alter the checks because "she seems to be an educated person and an educated person would not do this."

Defendant argues the court should not have excluded these witnesses, because their testimonies were directly relevant to Messick's credibility and character. This issue was addressed by the trial court during the hearing on the in limine motions. In fact, based on the transcript of the proceedings it is unclear whether the exclusion of Noon's testimony was properly preserved for appeal. During the hearing, defense counsel

9

requested that he be allowed to reserve Noon's testimony for impeachment purposes depending on the scope of Messick's testimony. The court asserted that it would "deal with that on a case-by-case basis if that occurs." However, defense counsel never sought to introduce Noon's testimony to impeach Messick during the trial.

Regardless, even if the exclusion of Noon's testimony was properly preserved for appeal, we would conclude, along with Flick and Nagel's testimonies, that the trial court did not abuse its discretion by excluding the evidence under Evidence Code section 352. "[T]he trial court has wide latitude under state law to exclude evidence offered for impeachment that is collateral and has no relevance to the action." (*People v. Contreras* (2013) 58 Cal.4th 123, 152.) "A collateral matter has been defined as 'one that has no relevancy to prove or disprove any issue in the action.' " (*People v. Rodriguez* (1999) 20 Cal.4th 1, 9.) "A matter collateral to an issue in the action may nevertheless be relevant to the credibility of a witness who presents evidence on the issue . . . . As with all relevant evidence, however, the trial court retains discretion to admit or exclude evidence offered for impeachment." (*Ibid.*)

The testimonies proffered by Noon, Flick, and Nagel, have no direct bearing on the issues presented at trial. The excluded witnesses were not going to testify about whether defendant forged and deposited the check. Messick's overall credibility and the way he conducted business at the restaurant can be considered relevant; however, it is merely a collateral matter. Even if collateral matters are relevant, the trial court retains the discretion to admit or exclude evidence if it finds it would be highly prejudicial or would be an undue consumption of time.

Here, the trial court did not err in concluding that information about Messick's business dealings with his investors, the troubled financial state of the restaurant, and his failure to pay rent to his landlord would have been largely irrelevant with little probative value. The excluded testimonies provided no information about the day-to-day

10

operations of the restaurant, which was vital to the defense's case. The defense argued that defendant may not have been the one who altered the check, presented evidence that multiple restaurant employees had access to the cash drawer where tip checks were held, and had Barnes, a former Tapestry employee, testify that receiving a $1,000 tip check would not have been beyond the realm of possibility. Barnes also testified that Messick was not accurate with his bookkeeping and disputes over tips were not uncommon. Based on the foregoing, it was not unreasonable for the trial court to conclude that the excluded witnesses would have unduly diverted the jury's attention from the issues actually being contested at trial or that additional testimony about Messick's imprecise accounting practices would have been largely cumulative.

Therefore, the court did not abuse its discretion.

3. *Section 654*

Lastly, defendant argues the trial court erred when it imposed multiple punishments for her two forgery convictions. She claims the court should have stayed one of the convictions pursuant to section 654.

Section 654, subdivision (a), provides in pertinent part: "[a]n act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision." "Section 654 precludes multiple punishments for a single act or indivisible course of conduct." (*People v. Hester* (2000) 22 Cal.4th 290, 294.) "The purpose of this statute is to prevent multiple punishment for a single act or omission, even though that act or omission violates more than one statute and thus constitutes more than one crime." (*People v. Hutchins* (2001) 90 Cal.App.4th 1308, 1312.)

The People argue that defendant's section 654 claim is unripe, because the trial court suspended imposition of sentence and placed her on probation. We agree. When a

11

trial court suspends imposition of sentence and places a defendant on probation, there is no punishment within the meaning of section 654. (See *People v. Wittig* (1984) 158 Cal.App.3d 124, 137 [holding that there is no § 654 issue when imposition of sentence is suspended].)

Defendant claims that pursuant to *People v. Fry* (1993) 19 Cal.App.4th 1334, a trial court has the authority to make a section 654 determination even if it places a defendant on probation. Defendant misreads *Fry*. In *Fry*, the trial court imposed but suspended *execution* of a sentence, meaning the court imposed on the defendant two punishments. (*People v. Fry*, *supra*, at p. 1340.) Here, the trial court suspended *imposition* of sentence. There is no punishment to be stayed in this case, because no punishment has been imposed.

Accordingly, defendant may not raise a section 654 claim unless and until she violates probation and is sentenced by the court to two punishments for her two forgery convictions.[5]

### DISPOSITION

The judgment is affirmed.

---

[5] Defendant claims that because analysis of a section 654 issue is a factual exercise entrusted to a trial court, it "makes far more sense for the judge who heard the trial to make the fact-based section 654 determination at the time of the trial" since a "different sentencing judge at a later violation of probation hearing would lack the familiarity with the trial record necessary for a just result." This argument lacks merit. Section 654 bars multiple *punishments*. Since imposition of sentence was suspended, there is simply no double punishment issue.

12

_____

Premo, J.

WE CONCUR:

_____

Rushing, P.J.

_____

Elia, J.