124 Cal.Rptr.2d 34 (2002)
101 Cal.App.4th 263
The PEOPLE, Plaintiff and Respondent,
v.
Darrell Tyjuan ALLEN, Defendant and Appellant.
No. A093927.
Court of Appeal, First District, Division Three.
August 16, 2002.
Review Granted October 23, 2002.
*35 Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Ronald A. Bass, Senior Assistant Attorney General, Stan M. Helfman, Supervising Deputy Attorney General, Violet M. Lee, Deputy Attorney General, for plaintiff and respondent.
*36 Thomas M. Singman, Oakland, under appointment by the Court of Appeal, for defendant and appellant.
Certified for Partial Publication.[*]
POLLAK, J.
Defendant Darrell Allen was sentenced to nine years in prison after a jury convicted him of theft, receiving stolen property, possession of a firearm, and resisting arrest. On appeal, he contends the prosecutor impermissibly exercised peremptory challenges to remove two African American women from his jury. He also contends the trial court erred by failing to give a unanimity instruction regarding the receiving stolen property count and by giving CALJIC No. 17.41.1. While in the unpublished portion of this opinion we reject one of defendant's asserted instructional errors, and find it unnecessary to determine the prejudicial effect of the other, in the published portion we conclude that the trial court's failure to correct the prosecutor's impermissible use of peremptory challenges requires that the judgment be reversed.

I. Factual and Procedural History

A. The Offense[**]

B. Jury Selection

At the start of the jury trial the trial judge conducted voir dire of the potential jurors including two African American women later challenged by the prosecutor.[2] Ms. W. stated that she was a benefit authorizer with the Social Security Administration and that her home had been burglarized about fours years prior. She confirmed that despite the burglary experience, she believed she could be fair to both sides. Ms. T. stated that she was a program analyst for Kaiser and that she had two cousins who worked in law enforcement. The court also asked her why she did not answer question number 11 on the juror questionnaire that asked: "Do you have any moral, religious or other principles which would make it difficult to determine whether someone's guilty or not guilty of a crime?" Ms. T. answered: "Because I think moral or religious and other covers a wide range, and I'd like for this to address this particular situation. I would be fair and impartial or try to be fair and impartial. I just circled it because I didn't understand what was being asked of me at the time." She then confirmed without reservation that she could make her decision based upon the law that the court would give her, the evidence she would hear or see in the courtroom, and her common sense, and not any other preconceived notion.
The prosecutor exercised his third peremptory challenge to excuse Ms. W. After he excused Ms. T. with his sixth peremptory challenge, defense counsel made a motion under People v. Wheeler (1978) 22 Cal.3d 258,148 Cal.Rptr. 890, 583 P.2d 748 (Wheeler) to dismiss the jury panel and recommence jury selection based upon the prosecutor's impermissible use of peremptory challenges. The trial judge found that a prima facie case of discrimination had been made, stating that he could not understand why the prosecutor had excused the two potential jurors. The judge asked the prosecutor for his reasons. As to Ms. W., the prosecutor's explanation, in full, was as follows: "The first woman, her very response to your answers, and her demeanor, and not only dress but how she took her seat. I don't know if anyone else noticed anything but it's my experience, *37 given the number of trials I've done, that that type of juror, whether it's a personality conflict with me or what have you, but they tend to, in my opinion, disregard their duty as a juror and kind of have more of an independent thinking." As to Ms. T., the prosecutor explained in full: "Ms. T. I had intended to leave on the panel when I passed the first time. Then I remembered that she circled No. 11, and I had put a note on my pad, and I didn't see it when I said pass the first time. And I remembered that she had questions as to what religious or moral convictions meant, and that concerned her, and that gave me concern that she would question things that may be evident on their face and may not make the sort of juror that I would like for that reason." The court denied defendant's motion without asking the prosecutor any questions and without making any findings with respect to the proffered explanations.

C. Verdict and Judgment[***]

II. Discussion

A. Defendant's Wheeler Motion

Defendant contends that the trial court erred by denying his Wheeler motion. He submits that the prosecutor's reasons for challenging the only two African American jurors in the box were not sufficiently specific to adequately explain any possible race-neutral reasons for doing so. Defendant also argues that the trial court failed to make a sincere, serious and reasoned inquiry into the prosecution's explanations.
Under article I, section 16 of the California Constitution, a defendant's right to trial by a representative jury is violated by the use of peremptory challenges to exclude jurors solely on the basis of group bias. (Wheeler, supra, 22 Cal.3d 258, 148 Cal.Rptr. 890, 583 P.2d 748.) Batson v. Kentucky (1986) 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (Batson), affords similar protection to an accused under the federal Constitution's equal protection clause. A court initially presumes that a party exercising peremptory challenges does so on a constitutionally permissible ground. (Wheeler, supra, 22 Cal.3d at p. 278, 148 Cal.Rptr. 890, 583 P.2d 748.) A defendant who claims impermissible use has the initial burden of establishing a prima facie case of purposeful discrimination. (People v. Williams (1997) 16 Cal.4th 635, 663-664, 66 Cal.Rptr.2d 573, 941 P.2d 752.)
"`[O]nce the opponent of a peremptory challenge has made out a prima facie case of racial discrimination ..., the burden of production shifts to the proponent of the strike to come forward with a race-neutral explanation....'" (People v. Silva (2001) 25 Cal.4th 345, 384, 106 Cal. Rptr.2d 93, 21 P.3d 769.) "The party seeking to justify a suspect excusal need only offer a genuine, reasonably specific, race- or group-neutral explanation related to the particular case being tried. [Citations.] The justification need not support a challenge for cause, and even a `trivial' reason, if genuine and neutral, will suffice." (People v. Arias (1996) 13 Cal.4th 92, 136, 51 Cal.Rptr.2d 770, 913 P.2d 980.) A prospective juror may be excused based upon bare looks and gestures, hunches, and even arbitrary reasons. (See People v. Turner (1994) 8 Cal.4th 137, 165, 171, 32 Cal.Rptr.2d 762, 878 P.2d 521.) For example, in Turner the court upheld a peremptory challenge where the juror's body language seemed angry and hostile. (Id. at p. 170, 32 Cal.Rptr.2d 762, 878 P.2d 521.) Similarly, in People v. Johnson (1989) 47 Cal.3d 1194, 1217-1218, 255 Cal.Rptr. 569, 767 P.2d 1047, the court found no impropriety *38 where the prosecutor excused prospective jurors who looked nervous, who looked tired, who looked weird, who seemed unable to relate to the prosecutor, who had a very defensive body position, who were overweight and poorly groomed and seemed not to trust the prosecutor. As noted in Wheeler, "even less tangible evidence of potential bias may bring forth a peremptory challenge: either party may feel a mistrust of a juror's objectivity on no more than the `sudden impressions and unaccountable prejudices we are apt to conceive upon the bare looks and gestures of another' [citation]upon entering the box the juror may have smiled at the defendant, for instance, or glared at him." (Id. at p. 275, 148 Cal.Rptr. 890, 583 P.2d 748.)
"If a race-neutral explanation is tendered, the trial court must then decide whether the opponent of the strike has proved purposeful racial discrimination." (People v. Silva, supra, 25 Cal.4th at p. 384, 106 Cal.Rptr.2d 93, 21 P.3d 769.) "This demands of the trial judge a sincere and reasoned attempt to evaluate the prosecutor's explanation in light of the circumstances of the case as then known, his knowledge of trial techniques, and his observations of the manner in which the prosecutor has examined members of the venire and has exercised challenges for cause or peremptorily...." (People v. Hall (1983) 35 Cal.3d 161, 167-168, 197 Cal. Rptr. 71, 672 P.2d 854.) "[A] truly `reasoned attempt' to evaluate the prosecutor's explanations [citation] requires the court to address the challenged jurors individually to determine whether any one of them has been improperly excluded. In that process, the trial court must determine not only that a valid reason existed but also that the reason actually prompted the prosecutor's exercise of the particular peremptory challenge." (People v. Fuentes (1991) 54 Cal.3d 707, 720, 286 Cal.Rptr. 792, 818 P.2d 75.) "Preferably, in ruling on a Wheeler motion, the trial court should state expressly its determination as to the adequacy of the justification proffered with respect to each peremptory challenge." (People v. Sims (1993) 5 Cal.4th 405, 431, 20 Cal.Rptr.2d 537, 853 P.2d 992.) Because Wheeler motions call upon trial judges' personal observations, appellate courts generally accord great deference to their determination that a particular reason is genuine. (People v. Silva, supra, 25 Cal.4th at p. 385-386, 106 Cal.Rptr.2d 93, 21 P.3d 769.) However, "we do so only when the trial court has made a sincere and reasoned attempt to evaluate each stated reason as applied to each challenged juror. [Citations.] When the prosecutor's stated reasons are both inherently plausible and supported by the record, the trial court need not question the prosecutor or make detailed findings. But when the prosecutor's stated reasons are either unsupported by the record, inherently implausible, or both, more is required of the trial court than a global finding that the reasons appear sufficient." (Id. at p. 386, 106 Cal.Rptr.2d 93, 21 P.3d 769.)
In Silva, the California Supreme Court held that the court failed to conduct a sincere and reasoned determination of the genuineness of the prosecutor's proffered explanations for exercising his peremptory challenges. (People v. Silva, supra, 25 Cal.4th 345, 106 Cal.Rptr.2d 93, 21 P.3d 769.) The court concluded that because the prosecutor gave reasons that misrepresented the record of voir dire, by quoting a misleading portion of a prospective juror's answers concerning the death penalty, "the trial court erred in failing to point out the inconsistencies and to ask probing questions." (Id. at pp. 376-377, 385, 106 Cal.Rptr.2d 93, 21 P.3d 769.) Similarly, in People v. Turner (1986) 42 Cal.3d 711, 230 Cal.Rptr. 656, 726 P.2d 102, the California *39 Supreme Court held that the trial court failed to make the required inquiry where the prosecutor's proffered reasons were either not specific enough or suggestive of bias. The court rejected the prosecutor's proffered race-neutral explanation that "something in [the juror's] work ... would not be good for the People's case," as "so lacking in content as to amount to virtually no explanation." (Id. at p. 725, 230 Cal. Rptr. 656, 726 P.2d 102.) The court went on to state that "[i]f such vague remarks were held to satisfy the prosecution's burden of rebutting a prima facie case of group discrimination, the defendant's constitutional right to trial by a jury drawn from a representative crosssection of the community could be violated with impunity." (Ibid) The court concluded that "the inadequacy of the prosecutor's reasons was compounded by the trial court's apparent acceptance of those reasons at face value." (Id. at p. 727, 230 Cal.Rptr. 656, 726 P.2d 102.) "In each instance the court listened to the prosecutor without question and promptly denied the motion without comment. As we have seen, however, the prosecutor's explanations were either implausible or suggestive of bias. They therefore `demanded further inquiry on the part of the trial court' [citation], followed by a `sincere and reasoned' effort by the court to evaluate their genuineness and sufficiency in light of all the circumstances of the trial." (Id, at pp. 727-728, 230 Cal.Rptr. 656, 726 P.2d 102.)
Similar obligations of inquiry and analysis exist under federal law. For example, in U.S. v. Sherrills (8th Cir.1991) 929 F.2d 393, 395, the court recognized that while inattentiveness may be a legitimate explanation, "determining who is and who is not attentive requires subjective judgments that are particularly susceptible to the kind of abuse prohibited by Batson .... [¶] These factors make the district court's observations particularly crucial. We believe a prosecutor's explanation of challenges on the grounds of inattentiveness deserves careful scrutiny by the district court, and special care by counsel to fully develop the record concerning the specific behavior by the venire members motivating counsel to make a peremptory challenge based on inattentiveness." (See also Jordan v. Lefevre (2nd Cir.2000) 206 F.3d 196, 200 [it is "error for the trial court to deny a Batson motion without explicitly adjudicating the credibility of the non-moving or challenging party's race neutral explanations for its action in peremptorily striking potential jurors"]; Hatten v. State (Miss.1993) 628 So.2d 294, 295-296, 298 [requiring the trial judge to make an on-the-record factual determination of each reason proffered by the State, including those based upon demeanor, protects the rights of defendant and potential jurors as well as makes a clear record for purposes of appellate review; prosecutor's explanation that he "`did not like the appearance of [a juror], felt that he would not be a good juror to hear this case'" was properly rejected as pretextual and "`... may well have served as mask[ ] for actually racially discriminatory purposes'"]; Williams v. State (Fla.App. 4 Dist.1989) 547 So.2d 179 [where the state challenges a venireman for being inattentive, that rationale will be deemed pretextual unless the state's rationale is either an uncontested matter of fact or is supported by observations made by the trial judge in the record].)
Here, the trial court found that defendant made a prima facie showing of discrimination and the People do not challenge that finding on appeal. The prosecutor excused the only two African American jurors in the jury box, both of whom have experiences or contacts that normally would be considered favorable to the prosecution, thereby demonstrating *40 "a strong likelihood that they were challenged because of their group association." (People v. Williams, supra, 16 Cal.4th at pp. 663-664, 66 Cal. Rptr.2d 573, 941 P.2d 752.) Thus, we move directly to an evaluation of the prosecutor's proffered explanations.
The prosecutor's reason for excluding Ms. T. is at best problematic. He excused her because "she had questions as to what religious or moral convictions meant, and that concerned her, and that gave me concern that she would question things that may be evident on their face and may not make the sort of juror that I would like for that reason." While this explanation is racially neutral, it misstates the record. Ms. T. said that she did not understand what question number 11 was asking, not that she had questions as to what religious or moral convictions meant. Additional explanation and probing would have been helpful, but we need not pursue Ms. T.'s situation further and shall assume that the trial court was justified in accepting the prosecutor's explanation for excusing her.
Whatever doubts there may be as to the sufficiency of the explanation for challenging Ms. T., the prosecutor's reasons for excusing Ms. W. are incomprehensible and not supported by the record. What specifically was she wearing, in what manner did she sit down that gave the prosecutor concern, and what response to which of the judge's questions led him to the conclusion that she would disregard her duty as a juror and think independently? Relying on "her demeanor" without a fuller description provides no basis to evaluate whether the decision was neutral. "[H]er very response to your answers," her "dress" and "how she took her seat" without some additional elaboration are not reasons that necessarily can be analyzed by the trial judge and they certainly cannot be evaluated on appeal.[4] What is reflected in the record is Ms. W.'s repeated affirmation that, despite the prior burglary of her home, she believed she could be fair to both sides. While the judge was presumably in a position to observe Ms. W.'s dress and may or may not have observed how she seated herself, the court failed to make any findings or to put anything into the record that explains the basis on which he found the prosecutor's explanation satisfactory. Absent some additional explanation or probing by the court, the prosecutor's reasons were simply inadequate.
The heart of the problem is thus the manner in which the trial court addressed defendant's motion. The judge failed to make any inquiry at all into the prosecutor's explanations, made no findings as to the genuineness of the proffered explanations, and took no steps to create a record that could be intelligently considered on appeal. In light of the vague and *41 unsupported reasons offered by the prosecutor, additional inquiry was necessary. (People v. Fuentes, supra, 54 Cal.3d at p. 719, 286 Cal.Rptr. 792, 818 P.2d 75; People v. Turner, supra, 42 Cal.3d at p. 728, 230 Cal.Rptr. 656, 726 P.2d 102.) Probing into what specifically about Ms. W.'s body language, dress and demeanor the prosecutor disliked presumably would have provided descriptions with which the trial court could have agreed or disagreed, and a record which would be capable of review. Alternatively, had the trial judge placed his own observations on the record, that may well have provided a sufficient basis for upholding the court's ruling. As the record stands before this court, however, it does not support a finding that the prosecutor's reasons for excusing Ms. W. were genuine or that the prosecutor met his burden to overcome the prima facie case of discrimination. The trial court did not satisfy its Wheeler obligation of inquiry and evaluation, and the conviction unfortunately must be reversed. Such "error is prejudicial per se: `The right to a fair and impartial jury is one of the most sacred and important of the guaranties of the constitution. Where it has been infringed, no inquiry as to the sufficiency of the evidence to show guilt is indulged and a conviction by a jury so selected must be set aside.'" (People v. Wheeler, supra, 22 Cal.3d at p. 283, 148 Cal.Rptr. 890, 583 P.2d 748.)[5]
B.-C.[]

III. DISPOSITION
The judgment is reversed and the matter remanded for a new trial.
We concur: McGUINESS, P.J., and PARRILLI, J.

Appendix
Ms. W.'s voir dire examination in full was as follows:
THE COURT: Q. Ms. W., have you been able to hear all the questions asked so far?
MS. W.: A. Yes.
Q. I'm sorry?
A. Yes, sir.
Q. Just keep in mind that this young woman has to take down what you and I say, so you have to speak up for us.
A. Okay.

*42 Q. Anything that you heard so far which makes you feel you couldn't be fair to both sides here?
A No.
Q. You're a benefit authorizer, with whom?
A. Social Security Admin.
Q. Okay. I suppose I should know about that. Okay. And you have a close friend or a family member in the legal business?
A. A cousin.
Q. And where does he or she practice?
A. In Los Angeles.
Q. I'm sorry?
A. Los Angeles.
Q. And you know what kind of law?
A. I believe it's corporate.
Q. Okay. And anything about that relationship which you believe would affect your ability to be fair to both sides here?
A. No.
Q. And you have indicated that you or a family member or close friend has been a victim, witness or defendant in a criminal matter. Will you tell me about that, please?
A. I believe it was like four years ago we were burglarized. Someone broke into our home and took some things.
Q. Did a trial result from that?
A. No, just the police report.
Q. All right. Have you had any dealings with the district attorneys office?
A. No.
Q. Any public defenders office or any other defense office?
A. No.
Q. Is there anything about that incident in your life which you feel would affect your ability to be fair to the defendant or the People in this matter?
A. No.
Q. Because we are dealing with a burglary in this case. Are you sure about that?
A. Yeah.
Q. All right. Would you be satisfied with 12 people in your frame of mind sitting on your jury if you represented the People or the defendant in this case?
A. Excuse me?
Q. All right. Try that again. Would you be satisfied with 12 people in your current frame of mind if you were either representing the People or the defendant in this matter
A. Yes.
Ms. T.'s voir dire examination in full was as follows:
THE COURT: Q. Do you prefer [name]?
A. [T.] is fine.
Q. All right. You didn't tell us what your occupation is?
A. I'm a programmer analyst with Kaiser.
Q. Okay. And how long have you been in that capacity?
A. I've been with Kaiser for 10 years and
Q. I'm sorry?
A. about 18 months, almost two years.
Q. Where were you employed prior to that?
A. I've been with Kaiser ten years, so it's been a long time.
Q. Different jobs?
A. Yeah, different roles at Kaiser.
Q. And you toldat least you indicate that you have some friends or close relatives in law enforcement?

*43 A. I have a cousin. I have a maternal cousin and paternal cousin. My maternal cousin is a law enforcement officer in Vacaville. My paternal cousin at one time worked for the East Palo Alto Police Enforcement.
Q. And the one in Vacaville's with the Police Department up there?
A. Yes.
Q. Okay. Anything about those relationships which you feel would affect your ability to be fair to both sides here?
A. No.
Q. And you won'tyou I don't want to go through it all over but
A. It's okay.
Q. You won't give a police officer any more weight than any other?
A. No, sir. No, sir.
Q. All right. Okay. Thank you.
MR. DEMERTZIS: Actually, Judge, before we leave Miss [T.], she circled No. 11 and I don't know if there's any significance to that.
THE COURT: Okay. You're absolutely right.
MS. T.: What's No. 11?
THE COURT: Q. Counsel pointed out that question No. 11I'll read it to you. Do you have any moral, religious or other principles which would make it difficult to determine whether someone's guilty or not guilty of a crime? You didn't answer yes or no, but you circled the question.
A. Because I think moral or religious and other covers a wide range, and I'd like for this to address this particular situation. I would be fair and impartial or try to be fair and impartial. I just circled it because I didn't understand what was being asked of me at the time.
Q. Okay. Well do you think that you can, without reservation, make your decision in this case based upon the law that I give you, the evidence you hear in the courtroom or see in this courtroom, and your common sense, and not any other preconceived notion or whatever? Can you do that?
A. Yes.
Q. Okay. And no doubt in your mind about that?
A. No.
NOTES
[*] Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts I.A., I.C., II.B., and II.C.
[**] See footnote *, ante.
[2] The relevant portion of the transcript of voir dire is set forth in the appendix, post.
[***] See footnote *, ante.
[4] The People suggest that Ms. W's peremptory challenge was also based upon her soft-spoken demeanor because the court asked her at the beginning of voir dire to speak up. The prosecutor, however, gave no such explanation at the time and this argument would appear to contradict the prosecutor's concern that she might think independently. Moreover, the record hardly supports the People's characterization of Ms. W. as soft-spoken. At the start of her voir dire, the court asked Ms. W. whether she had been able to hear all the questions asked so far. She replied "Yes." The court said, "I'm sorry," to which she repeated "Yes, sir." The court then reminded her that the court reporter had to take down what she says and so she'd have to speak up. There were no further remarks made about the volume of Ms. W.'s voice. In any event, "our concern is with the explanation the prosecutor gave to the trial court, not with a theory subsequently devised by the Attorney General for consumption on appeal." (People v. Turner, supra, 42 Cal.3d at p. 722, fn. 7, 230 Cal.Rptr. 656, 726 P.2d 102.)
[5] While Wheeler error has been deemed reversible per se in light of the fundamental right involved, remand for a further hearing on the issue may be ordered in appropriate cases. (People v. Williams (2000) 78 Cal. App.4th 1118, 1125, 93 Cal.Rptr.2d 356; People v. Gore (1993) 18 Cal.App.4th 692, 706, 22 Cal.Rptr.2d 435; People v. Snow (1987) 44 Cal.3d 216, 226-227, 242 Cal.Rptr. 477, 746 P.2d 452.) "Ordinarily, factors to be considered in determining whether remand is appropriate are the length of time since voir dire, the likelihood that the court and counsel will recall the circumstances of the case, the likelihood that the prosecution will remember the reasons for the peremptory challenges, as well as the ability of the trial judge to recall and assess the manner in which the prosecutor examined the venire and exercised other peremptory challenges." (People v. Williams, supra, 78 Cal.App.4th at p. 1125, 93 Cal. Rptr.2d 356.) This, however, does not appear to be an appropriate case. Voir dire in this case was conducted almost two years ago, it was a short and unremarkable trial, and the limited information in the record in unlikely to trigger reasonably accurate memories of Ms. W.'s dress and demeanor by the prosecutor and the judge. (Compare People v. Gore, supra, 18 Cal.App.4th at p. 706, 22 Cal. Rptr.2d 435 [limited remand appropriate because case was a death penalty case, and therefore it was "likely counsel and the court paid close attention to and are more likely to remember the specifics of voir dire as opposed to less serious cases"].)
[] See footnote *, ante.