Filed 11/5/21  P. v. Frazier CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>JAMAUCUS TEREATHEOD FRAZIER,<br><br>Defendant and Appellant. | C091730<br><br>(Super. Ct. No. 19FE016928) |

A jury found defendant Jamaucus Tereatheod Frazier guilty of possession of heroin with intent to sell (Health & Saf. Code, § 11351) and possession of methamphetamine with intent to sell (*id.*, § 11378).  The trial court sentenced defendant to two years eight months in county jail, followed by two years on mandatory supervision.

1

Defendant appeals. He contends the trial court erred under *Batson v. Kentucky* (1986) 476 U.S. 79 and *People v. Wheeler* (1978) 22 Cal.3d 258 by finding that he failed to establish a prima facie case of group bias based on the prosecutor's use of peremptory challenges during jury selection to excuse A.H., an African-American prospective juror. He also contends the court improperly lowered the prosecution's burden of proof by instructing the jury with legally correct but incomplete jury instructions regarding evidence of his uncharged conduct. We find no error and affirm.

## FACTS AND PROCEEDINGS

*Defendant's Arrest*

The underlying facts are not relevant to the issues on appeal. It suffices to say that in 2019, defendant, who is African-American, was lawfully searched and was found to have a bag of heroin, methamphetamine, a digital scale, and items used to smoke drugs.

*Prior Acts Evidence*

In 2017, defendant admitted to his probation officer that he consumed drugs two days before, and a search of his pants lying on the floor revealed a small but usable amount of cocaine and heroin, a plastic straw, and cash. Defendant admitted to owning the cocaine and heroin, to ingesting those drugs on a daily basis, and to buying and selling those drugs to pay for what he personally used.

## DISCUSSION

### I

### Batson/Wheeler

Defendant contends that the prosecution intentionally used its peremptory challenges to strike an African-American prospective juror based on her race in violation of *Batson v. Kentucky*, *supra*, 476 U.S. 79, and *People v. Wheeler*, *supra*, 22 Cal.3d 258. The trial court concluded defendant failed to make a prima facie case of discrimination and thus did not require the prosecutor to explain his reasons for the challenged strike. We see no error under the applicable law.

A. *Legal Background*

Prospective jurors (hereafter jurors, for convenience) may be peremptorily challenged for subjective or trivial reasons, including a juror's in-court demeanor, bare looks and gestures, or hunches, provided the reasons are genuine and not discriminatory. (See *People v. Jones* (2011) 51 Cal.4th 346, 361; *People v. Allen* (2004) 115 Cal.App.4th 542, 547.) However, "[b]oth the state and federal Constitutions prohibit the use of peremptory strikes to remove [jurors] on the basis of group bias. [Citations.] The now familiar *Batson*/*Wheeler* inquiry consists of three distinct steps. First, the opponent of the strike must make out a prima facie case by showing that the totality of the relevant facts gives rise to an inference of discriminatory purpose in the exercise of peremptory challenges. Second, if the prima facie case has been made, the burden shifts to the proponent of the strike to adequately explain the basis for excusing the juror by offering permissible, nondiscriminatory justifications. Third, if the party has offered a nondiscriminatory reason, the trial court must decide whether the opponent of the strike has proved the ultimate question of purposeful discrimination." (*People v. Scott* (2015) 61 Cal.4th 363, 383 (*Scott*).)

When a trial court denies a *Batson*/*Wheeler* motion because it concludes the defendant failed to establish a prima facie case of group bias, we consider the entire record of voir dire and affirm if the record suggests grounds for a reasonable challenge of the jurors in question. (*People v. Panah* (2005) 35 Cal.4th 395, 439.) We "accord particular deference to the trial court as fact finder, because of its opportunity to observe the participants at first hand." (*People v. Jenkins* (2000) 22 Cal.4th 900, 993-994; *People v. Bonilla* (2007) 41 Cal.4th 313, 341 [we consider only whether substantial evidence supports the trial court's conclusions].)[1]

---

[1] The appellate court in *People v. Collins* (2021) 60 Cal.App.5th 540, at page 550, footnote 6, recently described the effect of newly enacted legislation on *Batson*/*Wheeler*

3

Defendant asserts that our review is de novo.  But that is true only where the trial court applied the improper standard, or where it is unclear whether the trial court applied the correct standard.  (See *People v. Rhoades* (2019) 8 Cal.5th 393, 428-429 (*Rhoades*).)  As we will explain, the trial court applied the correct standard in this case, and therefore we review the court's conclusion for substantial evidence.

B. *Procedural History*

Each juror completed a questionnaire.  A.H., an African-American woman, wrote in her questionnaire that she had obtained an MBA degree, worked as a registered nurse, and had two children, aged 40 and 34.  The other adult with whom she lived was an engineer and had previously been an airline mechanic for the United States Air Force.  Her son--the questionnaire did not specify which of her two sons--had been arrested previously for domestic violence.  Neither she nor any of her close friends or relatives had been employed by a law enforcement agency.

---

claims:  "The Legislature recently enacted legislation to address concerns with the *Batson*/*Wheeler* framework.  It explicitly found 'the existing procedure for determining whether a peremptory challenge was exercised on the basis of a legally impermissible reason has failed to eliminate . . . discrimination.  In particular, the Legislature [found] that requiring proof of intentional bias renders the procedure ineffective and that many of the reasons routinely advanced to justify the exclusion of jurors from protected groups are in fact associated with stereotypes about those groups or otherwise based on unlawful discrimination.'  (Assem. Bill No. 3070 (2019-2020 Reg. Sess.) § 1, subd. (b).)  The Legislature 'designate[d] several justifications as presumptively invalid and provide[d] a remedy for both conscious and unconscious bias in the use of peremptory challenges.'  (*Ibid.*)  [¶]  Presumptively invalid justifications include '[e]xpressing a distrust of or having a negative experience with law enforcement or the criminal legal system' and '[h]aving a close relationship with people who have been stopped, arrested, or convicted of a crime.'  (Assem. Bill No. 3070 (2019-2020 Reg. Sess.) § 2, subds. (e)(1) & (e)(3).)  Neither party notes this legislation and we do not rely on it to decide this appeal.  (See *id*., § 2, subd. (i) [new legislation 'applies in all jury trials in which jury selection begins on or after January 1, 2022.'].)"  Like *Collins*, we do not consider this newly enacted legislation here.

During voir dire, A.H. acknowledged she had previously been in family court related to a divorce and traffic court 20 or more years before and that she felt she had been treated fairly during those previous experiences. She stated that her son had been charged with domestic violence in 2018 or 2019, but she did not know if the case remained pending. She agreed with the prosecutor that her son had not told her much about the case and that she was "just kind of staying out of that." She informed the prosecutor that her son's case would "[a]bsolutely not" affect her ability to be a juror in this case.

C.J., also an African-American woman, wrote in her questionnaire that she had completed her first year studying at University of California, Berkeley and that she was unmarried with no children. Neither she nor any of her close friends or relatives had been employed by law enforcement, had ever been the victim of a crime, had ever been arrested for a crime, or had ever witnessed a crime. She worked as an Amazon delivery driver.

During voir dire, C.J. acknowledged that she used social media but affirmed that she would follow the court's admonitions to not research the case or post anything about the case. C.J. also acknowledged that she knew someone else in the venire, but she assured the court that would not affect her ability to deliberate. When asked by the prosecutor, she agreed that she would find defendant guilty if the evidence proved to her beyond a reasonable doubt that the charges were true. C.J. stated that she was majoring in cognitive science with the possible goal of becoming a speech therapist upon her graduation from college.

The prosecutor exercised four peremptory challenges during the first round, and defendant made no objections and exercised no peremptory strikes. The prosecutor used his second of the four strikes to excuse C.J. The trial court then sat seven additional jurors to replace those who had been excused for cause or by the prosecutor. During the

5

second round of peremptory challenges, the prosecutor used his second challenge--his sixth overall--to excuse A.H.

Defendant made a *Batson*/*Wheeler* motion immediately after the prosecutor struck A.H.; he asserted that the prosecutor had excused A.H. on the basis of her race. He argued that nothing in A.H.'s questionnaire or her answers to questions during voir dire would form the basis of an opinion that she would be unfair. Defendant noted that the prosecutor did not exercise a strike against A.H. during the first round of peremptory challenges despite having the opportunity to do so. He observed that while the prosecutor had asked A.H. about her son's domestic violence case, A.H. had responded that she did not know much about it, and the prosecutor appeared satisfied. He asserted that "something changed that led [the prosecutor] to believe she could no longer be fair." Defendant recognized that the prosecutor did not ask her any other questions, and he saw no other reason why she would be eliminated other than her race.

The trial court invited the prosecutor to comment before making a finding as to whether the defense had made a prima facie showing of discrimination, but the prosecutor declined the invitation.

After a recess, the trial court acknowledged that A.H. and defendant appeared to be African-American, and thus were members of the same cognizable class. Nevertheless, the court indicated that the evidence was insufficient for it to draw an inference of discrimination. The court noted that the prosecutor "did not ask a proportionately different number of questions to this juror. And to the extent there were questions that were different or additional questions asked, it was appropriately in response to answers that were given by the prospective juror, and similar to followup [*sic*] that was done with regard to other prospective jurors as well." The court further observed that the removal of C.J., whom the court recognized was also African-American, "is not enough for the Court to find that discriminatory intent exists, not individually and not collectively, nor does the timing of the People's peremptory cause it

6

to become enough at this point.  [¶]  Even if it were, the evidence as a whole does not support a prima facie showing.  The fact that two of the People's peremptory challenges appear to be of the same cognizable group and of the same cognizable group of the defendant is insufficient evidence of a discriminatory challenge on the current record.  [¶] Under the totality of the circumstances, the Court cannot reasonably infer a discriminatory purpose."

After explaining how it was "leaning," the trial court invited additional argument from the parties.  Defendant disagreed with the trial court's assessment that the timing of A.H.'s removal did not establish a discriminatory intent, where the court had added seven more jurors to the jury box, but the new jurors shed no new information that would have prompted A.H.'s removal at a later time in the proceedings.

The trial court invited the prosecution to state its reasons "[e]ven though the Court is finding no prima facie showing."  This time, the prosecutor elected to state his reasons on the record.  The prosecutor explained that he sought the removal of C.J. because she was studying at the University of California, Berkeley, "a campus that is notoriously and fiercely liberal, criminal justice reform and criticisms of the law enforcement are very significant topics in California politics right now."  The prosecutor further explained that C.J. did not "have any particularly strong ties to law enforcement, such as friends or family members who work in law enforcement."

Turning to A.H., the prosecutor noted that she did not have strong ties to law enforcement, but his primary reason for his decision to remove her was her son's domestic violence case, her reluctance to answer questions about her son's case, and her apparent discomfort when the topic emerged.  He asserted that he did not want to "pry further into her reasons for that."  He explained:  "With the possibility of her son having a pending case in Sacramento County, it was a concern that she may not be fair and impartial in this case."  Additionally, the prosecutor expressed concern that A.H.'s sons were 34 and 40 years old--the prosecutor did not know which son had been charged with

7

domestic violence--and thus were close in age to defendant. Finally, the prosecutor recognized that he did not seek to remove another juror who also appeared to be African-American, but who had strong ties to law enforcement.

The trial court denied defendant's motion immediately and without further deliberation or elaboration. Neither the prosecution nor the defense exercised any peremptory challenges thereafter.

C. *Analysis*

Defendant argues that we should consider the prosecutor's reasons for striking A.H. But where, as here, the trial court determines that the defendant failed to establish a prima facie case of group bias, and then allows or invites the prosecutor to state reasons for excusing the juror but refrains from ruling on the validity of those reasons, our review is limited to the first-stage ruling. (*Scott*, *supra*, 61 Cal.4th at p. 386.)[2] In *Scott*, our Supreme Court stated: "[A] reviewing court may not rely on a prosecutor's statement of reasons to support a trial court's finding that the defendant failed to make out a prima facie case of discrimination. . . . [T]he fact that the prosecutor volunteered one or more nondiscriminatory reasons for excusing the juror is of no relevance at the first stage." (*Id.* at p. 390.) The court further recognized that it has "repeatedly encouraged trial courts to offer prosecutors the opportunity to state their reasons so as to enable creation of an adequate record for an appellate court, *should it disagree with the first-stage ruling*, to determine whether any constitutional violation has been established." (*Id.* at p. 388, italics added.)

---

[2] We recognize that reviewing courts "should not blind themselves to the record in the 'rare' circumstance that a prosecutor volunteers a justification that is discriminatory on its face." (*Scott*, *supra*, 61 Cal.4th at p. 391.) We see no such facially discriminatory justifications here.

Defendant acknowledges that this case involves only the first of these three stages, but he points to *People v. Hawthorne* (2009) 46 Cal.4th 67, a case decided six years before *Scott*. In *Hawthorne*, our Supreme Court determined that the defendant's cursory showing failed to raise an inference of discrimination. (*Id.* at p. 80.) At the very end of its discussion, without elaboration or explanation as to why it considered the prosecutor's comments, the court stated: "Moreover, the prosecutor's race-neutral reasons for the excusals confirmed the trial court's finding that there was insufficient evidence to permit the court to draw an inference that discrimination had occurred." (*Ibid.*) But without discussion as to the reasons for considering the prosecutor's comments in *Hawthorne* and with extensive discussion and explanation from the court in *Scott* as to why we should not consider the prosecutor's comments, we follow *Scott* and do not consider the prosecutor's justifications.[3]

We turn to the issue of whether substantial evidence supports the trial court's determination that defendant failed to make out a prima facie case that the prosecutor excused A.H. because of her race.[4] "Although the question at the first stage concerning the existence of a prima facie case depends on consideration of the entire record of voir dire as of the time the motion was made [citation], we have observed that certain types of evidence may prove particularly relevant. [Citation.] Among these are that a party has struck most or all of the members of the identified group from the venire, that a party has used a disproportionate number of strikes against the group, that the party has failed to engage these jurors in more than desultory voir dire, that the defendant is a member of

---

[3] Defendant contends that our high court has "backpedaled" from *Scott* and has acknowledged that *juror comparisons* are relevant in the first stage analysis. As we will explain *post*, we agree that juror comparisons are relevant, but that is a separate issue from whether we consider the prosecutor's stated reasons in the first stage analysis.

[4] Defendant did not challenge the strike of C.J. at trial, and he does not appear to raise a claim related to C.J. on appeal.

9

the identified group, and that the victim is a member of the group to which the majority of the remaining jurors belong. [Citation.] A court may also consider nondiscriminatory reasons for a peremptory challenge that are apparent from and 'clearly established' in the record [citations] and that necessarily dispel any inference of bias." (*Scott*, *supra*, 61 Cal.4th at p. 384, citing *United States v. Stephens* (7th Cir.2005) 421 F.3d 503, 516, 518 ["the examination of 'apparent' reasons in the record . . . involves only reasons for the challenges that are objectively evident in the record" such that "there is no longer any suspicion, or inference, of discrimination in those strikes"].)

We conclude substantial evidence supports the trial court's conclusion. The record shows that the prosecutor used two of his six peremptory challenges to eliminate two of the three African-American jurors seated in the jury box. Defendant was a member of the same identified group as A.H. and C.J., although there was no victim in this case to compare to the racial makeup of the rest of the venire. Additionally, because the jury questionnaire did not record race and ethnicity, the record does not state how many African-Americans were still in the venire after hardship and cause excusals. Defendant did not argue that the prosecutor had used his peremptory challenges to strike most or all African-Americans from the jury venire, or that there were no other African-American jurors remaining on the jury panel when the motion was made. (*People v. Hawthorne*, *supra*, 46 Cal.4th at pp. 79-80.) Accordingly, we cannot say whether the prosecutor's use of two strikes against African-Americans was substantially disproportionate to the representation of African-Americans in the venire.[5]

---

[5] Our Supreme Court recently observed that, based on census data, African-Americans constitute approximately 10 percent of the population in Sacramento County. (*Rhoades*, *supra*, 8 Cal.5th at p. 430, fn. 15.) The court in *Rhoades* took notice of the census data "in recognition of the possibility that the lack of on-the-record comment simply reflects that the pool's composition was apparent to court and counsel at the time," but it also recognized that "it was defendant's burden to make the record necessary to support his motion." (*Ibid.*)

"[T]he small absolute size of this sample makes drawing an inference of discrimination from this fact alone impossible. '[E]ven the exclusion of a single prospective juror may be the product of an improper group bias. As a practical matter, however, the challenge of one or two jurors can rarely suggest a *pattern* of impermissible exclusion.'" (*People v. Bell* (2007) 40 Cal.4th 582, 598.) Accordingly, defendant's *Batson/Wheeler* claim "was particularly weak as it consisted of little more than an assertion that a number of [jurors] from a cognizable group had been excused. Such a bare claim falls far short of 'rais[ing] a reasonable inference that the opposing party has challenged the jurors because of their race or other group association.'" (*People v. Panah*, *supra*, 35 Cal.4th at p. 442.) Further, defendant does not contend that the prosecutor engaged A.H. in "only desultory voir dire," and the record reflects that A.H. was subject to voir dire similar to that of other prospective jurors.

The record also clearly establishes nondiscriminatory reasons to excuse A.H. that dispel any inference of discrimination. When determining whether the record discloses readily apparent, race-neutral grounds for the use of peremptory challenges, we do not speculate about the reasons the prosecutor might have had for striking A.H. (*Rhoades*, *supra*, 8 Cal.5th at p. 431.) But where the record reveals " '*obvious* race-neutral grounds for the prosecutor's challenges to the [jurors] in question,' those reasons can definitively undermine any inference of discrimination that an appellate court might otherwise draw from viewing the statistical pattern of strikes in isolation." (*Ibid.*)

A.H. indicated on her questionnaire that she had two sons, aged 40 and 34, one of whom had been charged with domestic violence and may still have a case pending in Sacramento County. The fact that one of A.H.'s sons, who was close in age to defendant (defendant was 30), may have a criminal case pending in the same county in which the instant case was being tried was a race-neutral ground for the prosecutor to use a peremptory challenge against A.H. (*People v. Bryant* (2019) 40 Cal.App.5th 525, 543 [combination of juror's son's age and history of arrest distinguished juror from other

11

jurors]; *People v. Allen* (1989) 212 Cal.App.3d 306, 315-316 [peremptory challenge properly used where juror's close friend had been arrested for selling drugs].)

Defendant argues that comparisons between A.H. and another seated juror demonstrate that the nondiscriminatory basis in the record that we have identified does not help to dispel the inference that the prosecutor exercised his strikes in a biased manner. Our Supreme Court recently recognized that while some cases have declined to consider such juror comparisons in a first-stage *Batson/Wheeler* analysis, more recent decisions have considered such comparisons. (*Rhoades*, *supra*, 8 Cal.5th at p. 432, fn. 17.) The court in *Rhoades* considered such comparisons (*ibid.*), and we do so here.

Comparisons to the seated jurors the prosecution accepted do not negate the force of the readily apparent reason for the peremptory challenge against A.H. Defendant points to juror No. 728557--who was not subject to a peremptory strike by the prosecutor--who had stated that her daughter was convicted of driving under the influence of alcohol in Sacramento County in 2018. However, there are material differences between that juror and A.H. Juror No. 728557's daughter's case was not pending, she agreed that her daughter had been treated fairly, there was no evidence that the juror's daughter was close in age to defendant--her questionnaire stated that her daughters were aged 18 and 19--and the juror had previously served on a jury in a criminal trial that had reached a verdict. Thus, the combination of A.H.'s son's age, history of arrest, and the nature of the case as possibly still pending distinguish A.H. from juror No. 728557. (*People v. Bryant*, *supra*, 40 Cal.App.5th at p. 543.)

Finally, the seated jury included an African-American. The prosecutor's acceptance of another African-American juror "lessen[s] the strength of any inference of discrimination that the pattern of the prosecutor's strikes might otherwise imply." (*People v. Reed* (2018) 4 Cal.5th 989, 1000.) We recognize that accepting one juror of a particular group does not necessarily mean another juror of the same group was not dismissed due to membership in that group; there could be reasons why one juror appears

12

favorable to the party, while the other juror is nonetheless stricken precisely because of his or her group. (*People v. Collins*, *supra*, 60 Cal.App.5th at p. 554.) But the presence of a member of the group allegedly discriminated against, while not conclusive, indicates good faith in exercising peremptory challenges. (*People v. Stanley* (2006) 39 Cal.4th 913, 938, fn. 7.)

"We presume that a prosecutor uses peremptory challenges in a constitutional manner and give great deference to the trial court's ability to distinguish bona fide reasons from sham excuses." (*People v. Burgener* (2003) 29 Cal.4th 833, 864.) According proper deference to the trial court, we affirm the court's conclusion that defendant failed to make a prima facie showing of group bias.

II

*Jury Instructions*

Defendant contends the trial court erred by instructing the jury as to the prosecution's burden of proof regarding uncharged acts, which he argues was reasonably likely to mislead the jury into thinking that the prosecution only needed to prove defendant's mental state on the charged counts by a preponderance of the evidence. We disagree.

A. *Procedural History*

The trial court instructed the jury on the prosecution's burden of proof by reading CALCRIM No. 220, which stated in relevant part: "A defendant in a criminal case is presumed to be innocent. This presumption requires that the People prove a defendant guilty beyond a reasonable doubt. Whenever I tell you the People must prove something, I mean they must prove it beyond a reasonable doubt unless I specifically tell you otherwise." The court also instructed: "Unless the evidence proves the defendant guilty beyond a reasonable doubt, he is entitled to an acquittal and you must find him not guilty."

13

Regarding the evidence of defendant's 2017 drug sales offenses, the trial court instructed the jury on how to treat evidence of uncharged conduct with CALCRIM No. 375. The court instructed: "The People presented evidence that the defendant possessed heroin for sale, in violation of Health and Safety Code section 11351, in 2017, that was not charged in this case. [¶] You may consider this evidence only if the People have proved by a preponderance of the evidence that the defendant, in fact, committed the offense. [¶] Proof by a preponderance of the evidence is a different burden of proof than proof beyond a reasonable doubt. A fact is proved by a preponderance of the evidence if you conclude that it is more likely than not that the fact is true. [¶] If the People have not met this burden, you must disregard this evidence entirely. [¶] If you decide that the defendant committed the 2017 offense, you may but are not required to consider that evidence for the limited purpose of deciding in the current case whether: [¶] The defendant acted with the intent to sell heroin in Count One and the intent to sell methamphetamine in Count Two; and [t]he defendant knew the nature or character of the substances as a controlled substance when allegedly acted in this case. [¶] Do not consider this evidence for any other purpose. [¶] If you conclude that the defendant committed the uncharged offense, that conclusion is only one factor to consider along with all the other evidence. It is not sufficient by itself to prove that the defendant is guilty of possession of heroin for sale, in violation of Health and Safety Code Section 11351 as charged in Count One, or possession of methamphetamine for sale, in violation of Health and Safety Code Section 11378 as charged in Count Two."

The trial court did not instruct the jury with the final sentence of the pattern instruction: "The People must still prove (the/each) (charge [and] allegation) beyond a reasonable doubt." (CALCRIM No. 375.)

14

The record does not include a conference between the trial court and counsel regarding jury instructions, but neither party objected to the instructions given by the court, and the court characterized the instructions as "a stipulated set of instructions."**6**

The prosecutor stated in closing: "Now you can consider evidence of the 2017 case because those facts proved by a preponderance of the evidence that the defendant possessed heroin in 2017 for the purpose of sale, and I just need to emphasize this. [¶] This standard of proof, preponderance of the evidence, is different than proof beyond a reasonable doubt. [¶] In order for you to convict the defendant of any of the current charges, Counts One, Two or Three, those charges must be proof beyond a reasonable doubt. [¶] And that burden of proof is one defined in instruction [CALCRIM No.] 220. But preponderance of the evidence is a lower burden. [¶] It means that you have to find that the facts supporting the 2017 case are true more likely than not. Of course, they are. There is a conviction. The defendant admitted it, and you have [the probation officer's] testimony. So how do you use the 2017 case? [¶] . . . [¶] You can use it as evidence that the defendant acted with the intent to sell heroin in Count One, and methamphetamine in Count Two. [¶] The law allows you to use the evidence from the 2017 case to help prove the most difficult issue in the 2019 case. What the defendant's intent was at the time that he possessed those drugs? [¶] It also allows you to know that defendant knew the nature and character of the methamphetamine and heroin he

---

**6** "[F]ailure to object to instructional error forfeits the objection on appeal unless the defendant's substantial rights are affected. [Citations.] 'Substantial rights' are equated with errors resulting in a miscarriage of justice under *People v. Watson* (1956) 46 Cal.2d 818." (*People v. Mitchell* (2008) 164 Cal.App.4th 442, 465.) "The forfeiture rule applies to . . . claimed violations of fundamental constitutional rights." (*Ibid.*) However, while the court characterized the instructions as "a stipulated set," we cannot say whether defendant objected to the instruction during the conference on jury instructions. Nor does the Attorney General argue that defendant forfeited his claim of error. Accordingly, we consider defendant's claim. (See *In re Sheena K.* (2007) 40 Cal.4th 875, 887 [court may consider claim despite holding or assuming that claim was forfeited].)

possessed in the current case.  [¶]  Now the evidence of the 2017 case is a factor along with the other evidence that proves that the defendant is guilty of Counts One and Two in the 2019 case."

B.  *Standard of Review*

"When considering a claim of instructional error, we view the challenged instruction in the context of the instructions as a whole and the trial record to determine whether there is a reasonable likelihood the jury applied the instruction in an impermissible manner."  (*People v. Houston* (2012) 54 Cal.4th 1186, 1229.)  "The failure to give an instruction on an essential issue, or the giving of erroneous instructions, may be cured if the essential material is covered by other correct instructions properly given."  (*People v. Dieguez* (2001) 89 Cal.App.4th 266, 277.)  We " ' " 'assume that the jurors are intelligent persons and capable of understanding and correlating all jury instructions which are given." ' ' "  (*People v. Guerra* (2006) 37 Cal.4th 1067, 1148, overruled on another ground in *People v. Rundle* (2008) 43 Cal.4th 76, 151.)

C.  *Analysis*

Defendant contends the omission  of CALCRIM No. 375's final sentence could have rationally caused the jury to believe the reasonable doubt standard did not extend to the intent and knowledge elements of the charged crime.  We disagree.

First, as we have detailed above, the trial court properly instructed the jury that defendant was entitled to an acquittal unless the prosecution proved his guilt beyond a reasonable doubt, and the prosecution's burden of proof was beyond a reasonable doubt except where the court specifically instructed otherwise.

Second, the trial court adequately instructed the jury on how to treat the uncharged acts evidence.  The court instructed the jury that it may consider the uncharged acts evidence only if the prosecution proved that defendant committed the uncharged acts by a preponderance of the evidence--which it properly defined--and that the jury must disregard the evidence if the prosecution did not satisfy its burden.  The court instructed

16

that if the prosecution met its burden, the jury may, but was not required to, consider the uncharged acts evidence for the limited purposes of whether defendant acted with intent to sell, and whether he knew of the nature and character of the substances. To clarify the purposes for which the jury may consider the evidence, the court expressly cautioned: "Do not consider this evidence for any other purpose." The court further specified that if the jury found that defendant committed the uncharged acts, "that conclusion is only one factor to consider along with all the other evidence. It is not sufficient by itself to prove that defendant is guilty" of the charged crimes. Accordingly, the court conveyed to the jury that it could not find defendant guilty of any charged crime based on its finding regarding the uncharged acts evidence. Rather, the jury was to apply the preponderance of the evidence standard to the issue of whether defendant committed the uncharged acts, and it was then entitled to consider that evidence as one piece of evidence in determining whether defendant had committed the charged crimes beyond a reasonable doubt. Nothing in CALCRIM No. 375, as given, authorized the jury to use a preponderance of the evidence standard for anything other than the preliminary question of whether defendant committed the uncharged offenses, and nothing in the instruction authorized the jury to find true any element of the offense by a preponderance of the evidence. Indeed, the court specifically instructed that the jury's finding that defendant committed the uncharged acts was *not sufficient by itself* to prove the charged offenses.

Third, the prosecutor in closing argument explained that he was required to prove the current charges beyond a reasonable doubt, and evidence of the uncharged conduct-- assuming the jury found it true by a preponderance of the evidence-- could only be used as one factor along with the other evidence of the charged crimes in the determination of whether the prosecutor had proved the charged crimes beyond a reasonable doubt. (See *People v. Larsen* (2012) 205 Cal.App.4th 810 [considering closing arguments of counsel in determining effect of instructional error].)

17

Viewing the instructions as a whole, it is unreasonable to think the jury would have interpreted the instruction as given to authorize a finding of guilt of the charged offense based on a lower standard of proof than beyond a reasonable doubt. As our Supreme Court has recognized, "these different standards of proof are reconciled by the different purposes for which the evidence is used. When evidence of uncharged misconduct is admitted for the purpose of establishing identity or intent, we have explained that the crimes are mere 'evidentiary facts.' [Citation.] The jury cannot consider them at all unless they find them proven by a preponderance of the evidence. 'If the jury finds by a preponderance of the evidence that defendant committed the other crimes, the evidence is clearly relevant and may therefore be considered. [Citations.]' [Citation.] If the jury finds the facts sufficiently proven for consideration, it must still decide whether the facts are sufficient, taken with all the other evidence, to prove the defendant's guilt beyond a reasonable doubt." (*People v. Virgil* (2011) 51 Cal.4th 1210, 1259-1260.) That information was conveyed by the court's instructions. Surely, the final sentence--that the prosecution must still prove the elements of the charged crimes beyond a reasonable doubt--would have reiterated the prosecution's burden of proof. But the import of that final clarifying sentence was fully instructed elsewhere in the instructions, and the absence of that reiterating sentence did not make the instructions reasonably likely to cause the jury to apply an improper burden of proof.

Defendant relies on *Gibson v. Ortiz* (9th Cir. 2004) 387 F.3d 812, 821-822, overruled on other grounds in *Byrd v. Lewis* (9th Cir. 2009) 566 F.3d 855, 866, but that case confirms our conclusion. In *Gibson*, the Ninth Circuit Court of Appeals addressed an instruction regarding the burden of proof related to proving prior sexual offenses, which, when proved, authorize the jury to infer that the defendant had a disposition to commit the same or similar type of sexual offenses, and, based on that inference, to further infer that the defendant "was likely to commit and did commit the crime or crimes of which he is accused." (*Id.* at p. 822.) The trial court in *Gibson* also instructed the jury

18

that the prosecution had the burden to prove such prior sexual offenses by a preponderance of the evidence. (*Ibid*) The federal appellate court concluded that the effect of the instructions was to allow the jury to find that the defendant had committed the uncharged acts by a preponderance of the evidence and then to infer that he had committed the *charged* acts by a preponderance of the evidence. (*Ibid.*) The instructions here, unlike those in *Gibson*, did not permit such an inference. Rather, as we have discussed, the trial court clearly explained that the uncharged acts evidence, if proved by a preponderance of the evidence, could be *considered as evidence* of intent and knowledge, but was only one factor to consider along with the rest of the evidence and was not itself insufficient to establish intent or knowledge.

*People v. Reliford* (2003) 29 Cal.4th 1007, at pages 1012 to 1016 (*Reliford*), involved an analogous jury instruction (CALJIC No. 2.50.01) relating to uncharged acts of other sexual offenses. The court found that the instruction did not confuse the jury or have the effect of reducing the prosecution's burden. The court concluded the comparable parts of CALJIC No. 2.50.01 did not inform the jury that it could find defendant guilty if it found an uncharged sexual offense true by a preponderance of the evidence. The court observed: "The problem with the defendant's argument is that the instruction nowhere tells the jury it may rest a conviction solely on evidence of prior offenses. Indeed, the instruction's *next sentence* says quite the opposite: 'if you find by a preponderance of the evidence that the defendant committed a prior sexual offense . . . , that is not sufficient by itself to prove beyond a reasonable doubt that he committed the charged crime.' " (*Id.* at p. 1013.) The court concluded, "the instructions could not have been interpreted to authorize a guilty verdict based solely on proof of uncharged conduct." (*Ibid*.)

The court in *Reliford* emphasized: "By telling jurors that evidence of prior offenses is insufficient to prove defendant's guilt of the charged offenses beyond a reasonable doubt, jurors necessarily understand that they must consider all the other

19

evidence before convicting defendant." (*Reliford*, *supra*, 29 Cal.4th at p. 1015.) The court also recognized: "Nothing in the instructions authorized the jury to use the preponderance-of-the-evidence standard for anything other than the preliminary determination whether defendant committed a prior sexual offense . . . . The instructions instead explained that, in all other respects, the People had the burden of proving defendant guilty 'beyond a reasonable doubt.' " (*Id*. at p. 1016.) Thus, the jury would have understood that "a conviction that relied on inferences to be drawn from defendant's prior offense would have to be proved beyond a reasonable doubt." (*Ibid*.)

We recognize that the trial court's instruction did not expressly inform the jury that the uncharged acts evidence was *not* sufficient to " 'prove beyond a reasonable doubt that he committed the charged crime.' " (*Reliford*, *supra*, 29 Cal.4th at p. 1013.) However, we conclude that the court's instruction correctly informed the jury of the burden of proof for considering the uncharged acts evidence, and the limited purposes for which it was entitled to consider that evidence. Nothing in that instruction authorized the jury to find true any element of any charged offense by a preponderance of the evidence. Indeed, the instruction expressly stated that the uncharged acts evidence alone was insufficient to find defendant guilty of any charged crime. The court also gave the jury the full panoply of standard instructions informing the jury that, except where expressly stated, the prosecution was required to prove each element of the crime beyond a reasonable doubt. We conclude no reasonable jury could have found defendant guilty of any charged crime based on proof of the uncharged conduct beyond a preponderance of the evidence.

# DISPOSITION

The judgment is affirmed.

/s/
_____
Duarte, J.

We concur:

/s/
_____
Blease, Acting P. J.

/s/
_____
Robie, J.